THE SOUTH FLORIDA RAILROAD COMPANY, APPELLANT, VS. JOHN F. RHODES, APPELLEE.

1. In an action brought by a passenger against a railroad company to recover damages from the company for wrongfully expelling him from the defendant's train, it is not necessary for the declaration to allege that the passenger, at the time of his expulsion, was complying with all the reasonable rules of the company, nor to allege that the passenger was not about to violate any such reasonable rule at the time of his expulsion.

2. The question as to whether a contract or agreement entered into between the railroad company and a line of steamers plying between Jacksonville and Sanford was entered into in good faith, and was legal and binding, or that such contract constituted an

South Florida Railroad Co. vs. Rhodes—Opinion of Court.

oppressive monopoly, and hence was not legal and binding, is a mixed question of law and fact, and it was properly left to the jury to be passed upon by them.

3. The reasonableness of a rule prescribed by a railroad company, for the government of its business, is purely a question of law to be decided by the court, and not a question of fact to be passed upon by juries.

4. A rule adopted by a railroad company, which inhibited passengers on their trains from wearing the uniform cap of a line of steamers running in opposition to a line of steamers running in connection with the company, was not reasonable, and hence not binding on the public.

5. The statute (sec. 41, chap. 1987, Laws of Florida,) prohibits the expulsion of a passenger by a railroad company for non-payment of fare at any point other than a usual stopping place, or near some dwelling house. When, however, a passenger wantonly violates any other reasonable rule of a railroad company, the obligation to transport him ceases, and the company may expel him from the train at any convenient and safe point that may be selected by the officer in charge, no more force being used than may be necessary for such purpose. This is a common law right, and has not been restricted by statute as in cases of non-payment of fare.

6. The court charges upon the law of the case, and it is the duty of the jury in their verdict to conform thereto, but if they fail to do so it is the duty of the court to set aside the verdict.

Appeal from the Circuit Court for Orange county.

The facts of the case are stated in the opinion.

*S. M. Sparkman* and *S. T. Kingsbury* for Appellant.

*Geo. U. Walker* for Appellee.

MITCHELL, J.: This cause was tried at the fall term, Circuit Court, 1885.

The jury awarded the plaintiff $5,000 damages, motion for new trial made and overruled, and the case is before

this court upon appeal from the order of the Circuit Court overruling said motion.

The first error assigned is that the court erred in overruling the defendant's demurrer to the plaintiff's declaration.

The declaration alleges that on the 25th day of April, 1885, the plaintiff was received by the defendants to be carried as a passenger on their cars from Sanford to Orlando, Orange county, Florida * * ; that the defendants did not and would not carry the plaintiff as such passenger as aforesaid, but, on the contrary, without reasonable and lawful excuse therefor, then and there, by their agent and servant, the conductor, and the train hands of their said train, by force and arms ejected plaintiff therefrom, and left him and proceeded on their said journey; wherefore the plaintiff was injured in his person and feelings, and was compelled to travel afoot about four miles back to said Sanford, was prevented from accomplishing his purpose to go to Orlando, and was otherwise greatly damaged. Plaintiff claimed $20,000 damages. Second count: Plaintiff claimed from the defendants the further sum of $20,000 for damages for that, whereas, heretofore, to-wit: The 25th of April, 1885, the plaintiff was a passenger on the railway passenger car of the defendants, and was, with force and arms, without just, reasonable or lawful excuse therefor, ejected from the said car and forcibly prevented from returning to the same.

The declaration was demurred to. First. That it is bad in substance, in that it does not allege that the plaintiff, at the time it is therein alleged he was put off the defendant's cars, was complying with all the reasonable rules of said defendant. Second. That said declaration does not allege that plaintiff was not violating, or about to vio-

JANUARY TERM, 1889. 43.

South Florida Railroad Co. vs. Rhodes—Opinion of Court.

late, any reasonable rule of said railroad company. Third.. That plaintiff does not allege in his said declaration that the defendant has or usually keeps an office for the transaction of its customary business in the county of Orange.

There was no error in overruling the demurrer to plaintiff's declaration. Gould's Pleading, 164, sec. 17 ; 1 Chitty on Pleading, 390.

The circuit judge gave the jury a number of charges, or paragraphs of one charge, all of which, except the last, were excepted to by defendant.

*Inter alia*, the judge charged the jury that " Railroad companies, as carriers of persons, are not bound to receive for carriage, or to carry, persons whose purpose whilst traveling on the cars is to interfere or injure the legitimate business and lawful profits of the company, nor persons who are of known and violently bad character, or persons offensively gross and immoral in their conduct, habits and behavior, or so intoxicated as to be offensive, nor such as will not conform with the reasonable rules and regulations of the company in respect to the carriage of passengers, they being informed thereof or otherwise having knowledge of the same, nor such as refuse to pay their fare, or to procure tickets before entering the train, such objectionable person, for the objections aforesaid, may not only be refused admission into the cars of the company if their objectionable conduct, purpose, character or intention be known previous to such admission, but having been received thereon, may be expelled therefrom on rendering themselves obnoxious to any of such objections, the officers in charge using no more force or offensiveness than becomes necessary to effect such expulsion * * * ."

" A railroad corporation has the right to enter into an agreement with other lines of travel for the purpose of en-

hancing its own business, and for the benefit of the public, but it has not the right to enter into such agreement when it is for the purpose of an oppressive monopoly or to the injury of the public. In furtherance of such agreements they have the right to make all reasonable rules and regulations that will enable them to carry out in good faith the agreement, and can enforce such reasonable rules and regulations to the ejection of the violator of them. These rules and regulations can be made and enforced to carry out a legal and proper agreement, but they can not be made to enforce an agreement which is entered into for the purpose of oppressive monopoly.

" Should you find from the evidence that it was a *bona fide* agreement, and not entered into for the purpose of an oppressive monopoly, and that the rules and regulations made to enforce same are reasonable, and the plaintiff well knew such to be the rules and regulations at the time of his ejection from the train, and that he was knowingly and wilfully violating the same, or that the conductor had from the facts that occurred to him at the time of the plaintiff's ejection, good reason to apprehend that the plaintiff would violate one of such reasonable rules and regulations, you must find for the defendant.

" If, on the other hand, after viewing all the evidence, you believe that rules and regulations were not reasonable, and that the plaintiff did not knowingly violate any reasonable rule or regulation, and that he paid his fare and went upon said train as a passenger and properly demeaned himself and presented his ticket to the conductor, and was ejected by the conductor, and not allowed to go on the train to the destination his ticket called for, you must find for the plaintiff at such sum as you may, from the evidence, find him entitled to."

It will be seen that the Judge, in this part of his charge,

left it to the jury to decide whether the rules and regula-
tions prescribed by the railroad company were reasonable.
This was error. The reasonableness of rules prescribed by
railroad companies and like corporations with like powers,
is a question of law to be decided by the courts, and not a
question of fact to be decided by juries. L. & N. R. R.
Co., vs. Fleming, 18 Am. & Eng. R. R. Cases, 347 ; Ved-
der vs. Fellows, 20 N. Y., 126 ; Maroney vs. O., C. & N.
R. R. Co., 8 Am. Rep., 305 ; Yorter vs. M. L. S. & Wes-
tern Ry. Co., 41 *Ibid*, *23* ; I. C. & St. L. Ry. Co., vs. Nu-
zum, 19 *Ibid*, *703* ; 12 Texas, 290 ; Rorer on Railroads,
226, 227 ; Ill. C. R. R. Co., & Cole vs. Whittemore, 43 Ill.,
420.

In the case of Ill. C. R. R. Co., & Cole vs. Whittemore,
*supra*, the Supreme Court of Illinois say : "The Circuit
Court left it to the jury to say whether the rule was rea-
sonable. This was error. It was proper to admit testimo-
ny, as was done, but either with or without this testimony,
it was for the court to say whether the regulation was rea-
sonable, and therefore obligatory upon the passengers. The
necessity of holding this to be a question of law, and
therefore within the province of the court to settle, is ap-
parent from the consideration that it is only by so holding
that fixed and permanent regulations can be established.
If this question is to be left to the juries, one rule would
be applied by them to-day, and another to-morrow. In one
trial a railway would be held liable, and in another, pre-
senting the same questions, not liable. Neither the com-
panies nor passengers would know their rights or their
obligations. A fixed system for the control of the vast
interests connected with railways would be impossible,
while such a system is essential equally to the road and to
the public."

That railroad companies have the power to prescribe such reasonable rules and regulations as may be found necessary in the conduct of their business, is indisputable. The validity of the rule depends upon its reasonableness. If reasonable it has the force and effect of law, but if unreasonable it is not obligatory upon the public to obey it.

Webster defines a rule to be: " That which is prescribed or laid down as a guide to conduct; that which is settled by authority or custom; a regulation; a prescription; a minor law; a uniform course of things."

It is the duty of courts to pass upon and construe the laws of the land, and the reasonable rules and regulations established by a railroad being laws—minor laws—there is no good reason why the courts should not pass upon them and pronounce them reasonable and binding, or unreasonable and not binding, as the case may be.

The question as to whether the alleged agreement between the defendant and the DeBarry-Baya merchants' line and the People's line was a "*bona fide* agreement, and not entered into for the purpose of an oppressive monopoly " is a mixed question, of law and fact, and was properly left to the jury to decide.

And if the alleged agreement was legal, the reasonable rules and regulations prescribed by the railroad company to enforce the stipulations of such agreement were also legal and binding, but if the agreement itself was not legal it follows, of course, that the rules and regulations prescribed for the enforcement of the stipulations of the alleged agreement were also illegal and not binding. The rule prescribed by the railroad company inhibiting the wearing on their cars, the uniform caps and badges of the officers and employees of the Independent Line of Steamers, was not a reasonable rule, and hence not binding upon the persons wearing them, and if the company expelled

any such passenger for wearing such cap or badge such expulsion was illegal, and the passenger so expelled was entitled to damages therefor. Railroad companies have no right to so prescribe the dress of any passenger, the court charged the jury that :

" The passenger should first be informed of the occasion and the necessity for leaving and the train be brought to a standstill, at any usual stopping place, or near any dwelling house, as the conductor shall elect * *." This part of the charge is evidently based upon sect. 41, chap. 1987, Laws of Florida, but the section referred to applies solely to the expulsion of passengers from railway trains for non-payment of fare. It is not applicable to the case at bar, because the plaintiff was not expelled for not paying his fare. Under this charge of the court the jury were compelled to find for the plaintiff. The plaintiff may have been guilty of the most immoral and indecent conduct ; he may have been so intoxicated that he was offensive to other passengers, or his conduct may have been so violent as to endanger the lives of passengers and employees of the road, and yet under the charge, the company had no authority to expel him at any point other than a usual stopping place, or near a dwelling house. We do not understand this to be the law. The statute only requires passengers who refuse to pay their fare to be put off trains at a usual stopping place or near some dwelling house, and is silent as to what points passengers for violating other rules of railroad companies may be ejected. In Toledo, Wabash and Western Railway Co. vs. Wright, 34 Am. Repts., 277, it is held that " a statute providing that if any railway passenger shall refuse to pay his fare, he may be ejected at any usual stopping place, does not prohibit his ejection at any other safe point." And it is held by the Supreme

Court of Illinois, in Ill. C. R. R. Co. & Cole vs. Whittemore, *supra*, that " the refusal of a passenger to surrender his ticket to the conductor when demanded, does not constitute the same offense as the non-payment of fare, and the statutory prohibition against the expulsion of passengers for the latter offense, except at a regular station, does not apply to the former case. A railroad company may expel a passenger from its train at a place other than a regular station, for the violation of any reasonable rule other than that of non-payment of fare. When a passenger wantonly disregards any reasonable rule, the obligation to transporting him ceases, and the company may expel him from the train, using no more force than may be necessary for such purpose, and not at a dangerous or inconvenient place. This is a common law right, and has been restricted by statute only in cases of non-payment of fare."

The same rule prevails in this State. A railroad company, in ejecting a passenger for non-payment of fare, must do so at a usual stopping place or near some dewelling house. This is the only restriction imposed by statute as to the expulsion of passengers, it applies only to passengers who have not paid their fare. Passengers for other violations of the reasonable rules of railroad companies, may be ejected at any convenient safe point that may be selected by the officer in charge, no more force being used than is necessary.

There are many other objections urged against the charge of the court, but after carefully examining and considering the same, it is, in our judgment, unobjectionable, except as before stated.

The defendants requested the court to give numerous charges to the jury, some were given and others refused,

and the refusal to charge as requested by the defendants is assigned as error.

These charges, except the 9th, were properly refused.

The 9th charge requested by the defendants was as follows : " That the reasonableness of a rule or regulation prescribed by a railroad company is for the court to determine, and not for the jury." This charge should have been given, and the court erred in not doing so.

The grounds in motion for new trial are: That the verdict was contrary to law ; contrary to the evidence and the weight of evidence ; contrary to the charge of the court ; and that the damages awarded the plaintiff by the jury were excessive.

Now, as the case, for the errors mentioned, will have to be reversed and a new trial had, we do not desire or intend to express any opinion upon the evidence, except as to the amount of damages.

The evidence sent up in the record conduces to show that the appellee was ejected from the cars of the defendants April 25th, 1885 ; that prior to said expulsion the appellants had entered into a contract or agreement with the DeBary-Baya Merchants' Line and the People's Line of Steamers, plying between Jacksonville and Sanford, by which agreement the steamers of said lines were to await the arrival of the trains on the South Florida Road, and that the trains were to await the arrival of the steamers of said lines ; that the steamers were to procure freight and passengers for the road, and that the road was to do the same for the steamers of said lines ; that there was an opposition line of steamers running on the St. Johns river, between Jacksonville and Sanford, known as the " Independent Line ;" that the competition between the railroad

4

50 SUPREME COURT.

South Florida Railroad Co. vs. Rhodes—Opinion of Court.

company and the steamship lines, with which it had said agreement or contract, and the Independent Line was very sharp ; that the appellee at the time, April 25, 1885, was Purser on the steamer " Chesapeake," one of the boats of the Independent Line ; that the appellee drummed and solicited freight and passengers for the steamers of the Independent Line ; that the appellee went on the docks of the defendants at Sanford for the purpose of soliciting business for the Independent Line, and that he went on the trains of the defendant railroad company for the same purpose ; that the railroad company had established and published rules and regulations prohibiting such soliciting business on their said docks and trains; that the appellee had notice of the existence of such rules and regulations ; that one of such rules prohibited the officers and employees of the steamers of the Independent Line from wearing the uniform caps and badges of said steamers on the trains of defendants. That on the 25th of April, 1885, the appellee did not himself purchase his ticket to go to Orlando, but had a friend to purchase it for him, stating at the time that he had reasons for doing so, which he would give at another time ; that the appellee entered the cars of the railroad company wearing the uniform cap of Purser of the said Steamer Chesapeake ; that he entered the cars of the defendant just as the train was leaving Sanford ; that shortly after leaving Sanford the conductor, Anderson, went to the appellee and informed him that he was violating a rule of the company in wearing the cap he had on, and that he had orders to put him off the train if he did not take off the cap, and asked appellee if he would do so, and he answered that he would not ; that the conductor then stopped the train, went to appellee again and asked him to leave the train, which appellee refused to do, and said that

the conductor would have to put him off; whereupon the conductor put his hand on the shoulder of the appellee and started to lift him out of the seat, but the conductor found that appellee had fastened his feet under the seat just in front of him, whereupon the conductor called to his assistance the baggage-master and a brakeman, and proceeded to expel the appellee; that Rhodes still clung to the seats, and that much force was required to expel him; that Rhodes, by so resisting, was bruised in several places, and that he was somewhat lame for two or three days; that after being so ejected, and just as the train was moving off again. Rhodes sprang upon the platform of the rear car; whereupon the conductor, assisted as before, again expelled him and held him down in the sand till the train moved off and left him, and that Rhodes then walked back to Sanford, some four miles.

There was also evidence tending to show that the appellee went on the train of the defendants expecting and hoping that he might be expelled therfrom for the purpose of building a case of damages against the company.

This is only the substance of the evidence, but we think it sufficient to give a clear understanding of the case.

And now the question arises, how did the jury arrive at the conclusion that the appellee was entitled to $5,000 damages?

It is clear that if the appellee, at the time he was expelled from defendant's cars, had not violated or attempted to violate any reasonable rule of the railroad company, he was entitled to damages, either compensatory or exemplary. Did the jury find that he was entitled to only compensatory damages, and if so, upon what did they base their calculation? Wherein was it shown that from any and all causes the appellee sustained pecuniary loss to the amount of $5,000? The evidence discloses no set of cir-

cumstances under which the appellee was entitled to $5,000 as compensatory damages. Did the jury intend to allow the appellee exemplary damages, and if so, upon what did they base their verdict?

Even admitting that at the time the appellee was expelled from defendants train he had violated no reasonable rule of the company; that he did not intend to violate any such rule, and then wherein was he damaged to the amount awarded him by the jury? There is nothing in the evidence to show that any indignity was shown the appellee in ejecting him from defendant's cars, further than to use force sufficient to effect his expulsion; and in fact, it is shown that the force used in putting the appellee off the train was only so much as was necessary to accomplish that purpose.

The Circuit Court charged the jury upon vindictive damages as follows: "Vindictive damages are not allowed unless for acts accompanied with maliciousness brought home to the intent of the company. If the expulsion be committed with wilful violence or wrong on the part of the conductor as to the manner of putting off the train and in discharge of their duties, then exemplary damages may be given."

Now, where is there any "maliciousness" shown by the evidence which was "brought home to the intent of the company?" None such is shown, and this being the case, the verdict was contrary to the charge of the court.

The 12th charge requested by defendant was as follows: "It is not necessary for a party who desires to test the right of a railroad company to eject him from its cars to do more than to express his dissent to such ejection, and if such passenger resist the effort to eject him, and receives personal injury occasioned by such resistance, and no more force was used by the agent of the company in expelling

such passenger than was necessary to accomplish such expulsion, the passenger can not recover against such railroad company for such injuries so received."

This charge was given as requested, and we think the charge was proper, and this being the case, how did the jury arrive at their conclusion and award the plaintiff $5,000 damages? The testimony shows that the personal injuries received by the plaintiff in consequence of such expulsion, were but slight *and it tends strongly to show* that such injuries so received by the plaintiff were inflicted in consequence of his resistance to the officers of the company, and in finding as they did, the jury found contrary to the charge of the court.

The court refused to set aside the verdict; this was error.

Reversed.