BOND M. WRIGHT AND HUSBAND T. J. WRIGHT, *Plaintiffs in Error*, v. GEORGIA SOUTHERN & FLORIDA RAILWAY COMPANY, A CORPORATION, *Defendant in Error*.

Opinion Filed December 16, 1913.

1. A person who insists on riding in a passenger car of a railroad company who has no ticket and has not paid or offered to pay the regular price of transportation after being given a reasonable opportunity to do so, is a trespasser, and may under the statute be ejected by the conductor and servants of the company at any usual stopping place, or near any dwelling as they may elect, using no more force than is reasonably proper and necessary in so doing.

2. The only duty a railroad owes a trespasser upon its cars is not to use excessive or unnecessary force or violence in removing him or ejecting him without regard to his safety; or in other words to refrain from intentional, wilful or wanton injury to him.

3. A railroad company is not liable for a tortious act of its servant perpetrated on a trespasser, unless the servant is acting within the scope of his authority or employment, or by special authority..

4. Where the relation of passenger and carrier exists a stringent rule of liability for the tortious acts of the latter's agents prevails. A passenger is entitled to protection against violence, abuse or an assault and battery upon his person by the agents of the carrier though such acts may be unauthorized by the carrier and prompted by vindictiveness on the part of the agent or servant.

5. By virtue of Section 2880 General Statutes of 1906, a railroad conductor has no authority to sell a transportation ticket of any kind, and a ticket agent can not confer such authority upon the conductor.

Writ of error to Circuit Court of Columbia County; Mallory F. Horne, Judge.

Judgment affirmed.

*Cone & Chapman, W. B. Cone* and *W. H. Wilson,* for Plaintiffs in error;

*J. E. Futch,* for Defendant in error.

HOCKER, J.—The plaintiffs in error brought an action at law against the defendant in error in the Circuit Court of Columbia County. The declaration contains three counts, the substance of each of which seems to be as follows:

First Count. The defendant railway company on the 6th of August, 1912, owned, operated and managed a line of railway as a common carrier of passengers for hire between Palatka, Putnam County, Florida, and the city of Macon, County of Bibb, State of Georgia; that several days prior to the date aforesaid it advertised at all regular stopping places between Palatka and Macon to the general public, including plaintiff, a reduced rate of fare for an excursion on that date from Palatka to Atlanta and Macon, Georgia; that plaintiff on that date in good faith with the intention of taking passage from palatka to Atlanta and Macon, did enter defendant's premises at Palatka, prior to the departure of said excursion train, and demanded and requested of defendant's ticket agent, a ticket and did tender and offer to pay said agent the sum of four dollars and fifty cents, the sum required by defendant for round trip transportation from Palatka, Florida to Macon, Georgia, and return; that said demand and tender were made a reasonable length of time prior to the

scheduled departure of said train, and said ticket was denied the plaintiff at that time, there being many other passengers demanding tickets at the same time, the ticket agent representing that on account of the volume of business he could not furnish the ticket requested by the plaintiff, but that the Conductor on said train had full power and authority to issue and furnish plaintiff upon tender and payment of the sum of money aforesaid, said ticket, and plaintiff relying on these statements entered upon the train and became a passenger; that before the train left Palatka, and afterwards at all regular stopping places, including Hampton, Grandin, Sampson City, Lake Butler and Lulu, Florida, plaintiff tendered to the Conductor of said train the sum of Four Dollars and Fifty cents ($4.50), the amount required by the defendant for a return trip ticket from Palatka to Macon, Georgia; that the defendant by its agents did refuse plaintiff a ticket or other evidence of plaintiff's right to ride on said train, and the money was refused without just cause or excuse; that said defendant corporation through its servants, agents and employees acting within the scope of their authority exercised a wanton, reckless and careless disregard of the safety and welfare of plaintiff, and at Lake City, its regular stopping place, did by means of force, strength and threats, push, shove, move and strike and extract plaintiff from its cars against her will, and did refuse transportation to her from Palatka to Macon and return; that in addition to the acts aforesaid, defendant by its agents and servants, acting within the scope of their authority and employment, did procure, enlist and secure the services of the sheriff and deputies of Columbia County, Florida, with the chief of police of Lake City *after* the extraction and expulsion of the plaintiff as aforesaid, and did cause the sheriff and other officers aforesaid in

Lake City aforesaid, while on the train aforesaid, to arrest the plaintiff without just excuse or reasonable or legal cause, and against her will, and to force plaintiff along the public roads, streets, alleys and parks of Lake City, and did parade *them* before the people, citizens and visitors of Lake City, to the Court House of said City. Plaintiff further shows that in consequence of the premises plaintiff has been and still is greatly injured in feeling, credit and reputation, and· brought into public scandal and disgrace, did suffer mental anguish, pain, humiliation, disgrace, nervous strain and suffering in the sum of $1,950.00. Wherefore this plaintiff brings this suit, and claims $1,950.00 damages.

In the brief of plaintiff in error, the second count is treated as containing virtually the same cause of action as the first and like damages, *viz.* "compensatory and punitive damages for removing the plaintiff from the train."

The third count alleges the same facts as the first two, as to the plaintiff's becoming a passenger on the train of defendant, and adds substantially that while plaintiff was a passenger on the cars of the defendant in Lake City, a station₄ between Palatka and Macon, that defendant, by means of its servants, agents and employees acting within the scope of their employment did cause the sheriff and his deputies of Columbia County and the chief of police of Lake City, upon the arrival of the train in said city, wantonly, falsely, maliciously and negligently, without just and reasonable cause or legal excuse to arrest the plaintiff for the purpose of injuring the feelings, credit and reputation, causing her mental anguish, pain and humilation, and to bring plaintiff into public scandal and disgrace, and charged her with a certain crime, to-wit, riding upon defendant's train without a ticket, wantonly

and maliciously caused said officers to take plaintiff from the train and along the public streets, alleys and parks of Lake City from the depot to the Court House of Columbia County; that plaintiff was innocent of the violation of any law which was known to defendant, and there was no reasonable or probable cause why plaintiff should be arrested; that after plaintiff was "extracted" from the train, defendant caused her to be carried by said officers to the Court House of Columbia County, where plaintiff was accused by defendant of violating the laws of the State, and that plaintiff was not convicted of any crime, and was discharged. In consequence plaintiff was greatly injured in her feelings, credit, etc., brought into scandal and disgrace, etc., suffered great anxiety and pain of body and mind, etc., caused her to pay out $25.00 in defending herself, hotel bills, railroad fare, medicine, medical attention and other expenses, to the amount of $100.00, prevented her from taking her said journey, etc., whereby she sues for $1,950.00.

After omitting repetitions, we think the foregoing contains the substance of this count. A demurrer was, filed to this declaration, made applicable to each count, containing sixteen grounds. On a hearing the Circuit Judge sustained the demurrer on four grounds, and the plaintiff declining to amend, a final judgment was entered in favor of the defendant.

The grounds of the demurrer which were sustained raise the question, first, that the plaintiff at the time she was expelled from the train was not a passenger, but a trespasser; second, that the expulsion of the plaintiff from the train was not only excusable, but proper and necessary; third, it is not shown that the Conductor had any authority to issue a round trip or excursion ticket from

Palatka to Macon; fourth, the facts set forth in the declaration do not show a cause of action.

Section 2880 General Statutes of 1906 makes it illegal for the officers of a common carrier to supply tickets for sale to any person other than the regularly authorized ticket agent as provided for in the previous section, and makes it illegal for any person not possessed of such authority to sell, barter or transfer, for any consideration whatever, the whole or any part of any ticket, pass or other evidence of transportation. There are certain provisos to this section not applicable to this case. Section 2859 General Statutes of 1906 provides that "if any passenger shall refuse to pay his fare, the Conductor of the train and the servants of the corporation may put him and his baggage out of the cars on stopping the cars at any usual stopping place, or near any dwelling, as the conductor shall elect." It may be assumed for the purposes of this case that when the plaintiff boarded the train at Palatka, as she says by direction of the ticket agent, she had the status of a passenger, although she had no ticket. She immediately, however, demanded of the Conductor a round trip ticket tendering $4.50, the price of such a ticket, and repeated this demand and tender at every regular stopping place until the train reached Lake City. Under the sections of the statute which we have quoted the conductor had no authority to sell plaintiff a ticket of any kind, and the ticket agent could not confer such authority. Whether the plaintiff has any remedy for the conduct of the ticket agent, we are not called on in this action to say. His conduct is not the gravamen of this suit. In the first two counts of the declaration, it is asserted in the brief of plaintiffs in error, plaintiffs claim "compensatory and punitive damages for removing the plaintiff from said train." The status of the plaintiff

after the train left Palatka was that of a trespasser. She was riding on the train without a ticket, and without paying or tendering the regular fare. It was the right of the Conductor and servants of the corporation to put her out of the train at any usual stopping place, or near any dwelling, as they might elect, using no more force than was actually necessary in so doing. The only duty a railroad corporation owes a trespasser upon the cars is not to use excessive or unnecessary force or violence in removing him or ejecting him without regard to his safety, or in other words to refrain from intentional, wilful and wanton injury to him. 2 Hutchinson on Carriers (3rd ed.) Sec. 990 and note 20; 1 Fetter on Carriers of Passengers, bottom page 613, and 622. In South Fla. R. Co. v. Rhodes, 25 Fla. 40, 5 South. Rep. 633, this court held that when a passenger wantonly disregards any reasonable rule, the obligation to transport him ceases, and the company may expel him from the train, using no more force than may be necessary for such purpose. The plaintiff demanded the right to ride on the train without a ticket, and without tendering the usual fare. Under these circumstances the defendant company had the right to eject her from the train at Lake City, a usual stopping place, using no more force than was necessary for the purpose. It will be noticed that neither the first or second count alleges that more force was used in ejecting her than was necessary. So far these counts state no cause of action.

The third count of the declaration after alleging all "the material allegations as are set forth and contained in the first two counts," then alleges in substance that on the 6th of August, 1912, while the plaintiff was a passenger on defendant's train, that said defendant by its servants and agents, in the City of Lake City, Florida, wantonly, maliciously and without cause or excuse, and act-

ing within the scope of their authority, did cause the Sheriff of Columbia County, and the Chief of Police of Lake City, to arrest the plaintiff for the purpose of injuring feelings, credit and reputation, and to cause mental anguish, pain and humiliation, and to bring her into public scandal and disgrace, "wantonly, maliciously, falsely and negligently caused the plaintiff to be forced from the cars," charged her with a certain crime, to-wit, riding upon the defendant's train without a ticket, forced her along the public streets and alleys of said city without reasonable or probable cause or excuse, the plaintiff being entirely innocent of any crime, caused her to be carried to the Court House of Columbia County, where plaintiff was accused by defendant of violating the laws of Florida; that plaintiff was discharged from custody, and not convicted of any crime "as alleged and charged" against her. In consequence plaintiff has been injured in her feelings, credit and reputation, suffered mental anguish, pain and humiliation, brought into public scandal and disgrace with the most of the citizens of county and State, has paid $25.00 in defending herself, hotel bills, railroad fare, medicines and other expenses in the sum of $100.00, was prevented in making her journey, transacting business, &c., she claims $1,950.00 damages. Notwithstanding this count abounds in rhetorical language and repetition, the foregoing gives a sufficient idea of its contents. It will be noted that the declaration alleges and charges that the servants, agents and employees of the defendant railroad were *acting within the scope of their authority in committing* the outrages so graphically described in the declaration, no special authority for such conduct is alleged, and we are left to discover such authority from the general scope of

their authority as recognized in the decisions of the courts and text-writers on the law of Carriers of Passengers. The plaintiff had ridden on the train from Palatka to Lake City without a ticket, and without tendering the usual fare to the Conductor. She was therefore a trespasser. Moore on Carriers, pp. 553, 555; 6 Am. & Eng. Ann. Cas. note p. 1033. As we have said of the first two counts, no facts are stated which tend to show that any more force was used in ejecting her from the train than was reasonably necessary. It is apparent that the plaintiff did not intend to leave the train without being removed from it by the Conductor and servants of the company. Some force appears to have been necessary for her removal. It was within the scope of the employment of the Conductor and other servants of the company to use the necessary force. So far it does not appear that a cause of action is stated in this count. The next question is, was it within the scope of the employment of these agents of the defendant to carry the plaintiff through the streets, alleys, &c., of Lake City to the Court House on an alleged charge of having violated the law, when the statement of the act charged does not show any violation of law. To ride on a train without a ticket does not appear to be a criminal offense of any sort under the laws of Florida. She does not appear to have been prosecuted for beating her way on the train under Section 3643 General Statutes of 1906. The acts charged in the declaration do not appear to have been within the scope of the employment of the Conductor or other agents of the company. No authority is shown construing them to be such. They were torts. The general rule is that a carrier can be held liable for the torts of its servants only when they are done by the servant

in the course of the servant's duty, and in his undertaking
to perform it, but not when they are acts of wilful mis-
conduct not done in the line of duty. 2 Hutchinson on
Carriers, Sec. 1099. Where the relation of passenger and
carrier exists, a stringent rule of liability for the tortious
acts of the latter's agents prevail. A passenger is en-
titled to protection against violence, abuse or an assault
or battery upon the person of the passenger by the agents
of a carrier, though such acts may be unauthorized by
the carrier and prompted by vindictiveness on the part
of the agent or servant. 2 Hutchinson on Carriers Sec.
1093; 19 Ann. Cas. note p. 618. But we have found
no authority for applying this rule to the case of a
trespasser, or a stranger. The rule in such cases is that
to render the master liable for the torts of the servant,
the latter must be acting within the scope of his authority
or employment, or by special authority, or there must
be a ratification of the acts of the agent. This doctrine
is thoroughly discussed and a large number of authorities
are examined in the case of Daniel v. Atlantic Coast
Line R. Co., 136 N. C. 517, 48 S. E. Rep. 816, 67 L. R. A.
455. The head-note is as follows: "The appointment of
one as cashier at a railway station with power to collect
money, give receipts, sell tickets, take care of the money
received and forward it to the treasurer of the company
does not empower him to arrest persons whom he suspects
of having stolen money which has come into his posses-
sion, so as to render the railroad company liable in case
he causes the arrest of an innocent person." In the
opinion the court says: "We are not concerned so much
with the manner in which the arrest of the plaintiff was
made as we are with the question whether the defendant,
who was the principal of Atkinson and Meacham (who

caused the arrest) is to be charged with liability for their tortious acts. That their conduct towards the plaintiff was inexcusable, if not criminal, and justly provokes the resentment of every good and law-abiding citizen against them may be freely admitted." After reprobating the conduct of the agents of the railway company the court proceeds: "It is not pretended in this case that there was any express authority, or that there was any ratification of the alleged agents. The plaintiff's sole contention is that what Atkinson (the ticket agent) did at Greenville, and Meacham (agent) at Kingston was within the line of their duty, and the scope of their employment, and therefore they had implied authority from the defendant to do what they did upon the theory, we suppose, that every authority carries with it or includes in it, as an incident all the powers which are necessarily proper or usual as a means to effectuate the purposes for which it is conferred, and that consequently when an agency is created for a specified purpose, or in order to transact particular business, the agent's authority by implication embraces the appropriate means and power to accomplish the desired end. He has not only the authority which is expressly given, but such as is necessarily implied from the nature of the employment (Story on Agency 9th ed. Sec. 97.). This is the general rule, and the doctrine of *respondeat superior* is a familiar one. But in our opinion it has no application to the facts in this case. If we should hold that it is so broad in its scope as to include a case like this one, it would lead to most dangerous consequences. For us to say that an agent can by his acts subject his principal to liability in damages to any one injured by his said acts, done when he was not about his master's business and had

no express or implied authority to do them, but was mere
ly seeking to avenge a supposed wrong already committed,
or to vindicate public justice would be carrying the
doctrine of *respondeat superior* far beyond its acknowl-
edged limits.. A servant entrusted with his master's goods
may do what is necessary to preserve and protect them,
because his authority to do so is clearly implied by the
nature of the service; but when the property has been
taken from his custody or stolen, and the crime has al-
ready been committed, it can not be said that a criminal
prosecution is necessary for its preservation or protec-
tion. This may lead to the punishment of the thief or
trespasser, but it certainly will not restore the property
or tend in any degree to preserve or protect it. It is an
act clearly without the scope of the agency, and cannot
possibly be brought within the limits of the implied
authority of the agent. It would seem that so plain a
proposition should neither need argument nor authority
to support it, but we are abundantly supplied with both
in the cases upon the subject. It is not intended to
assert that a principal cannot be held responsible for the
wilful or malicious acts of the agent when done within
the scope of his authority, but that he is not liable for
such acts unless previously expressly authorized or sub-
sequently ratified when they are done outside of the
course of the agent's employment and beyond the scope
of his authority, as when the agent steps aside from the
duties assigned to him by the principal to gratify some
personal animosity, or to give vent to some private feel-
ing of his own." This court then proceeds to examine a
number of cases sustaining the views which are expressed.
It says further: "Nor does the question of liability depend
on the quality of the act, but rather upon the other

question, whether it has been performed in the line of duty and within the scope of the authority conferred by the master. The facts of this case do not bring it within the principle. There is no ground for saying that what was done by the agent was in the ordinary course of the business of the company, nor that it was for its benefit, except in so far as it is for the benefit of all the citizens of the State that a criminal should be prosecuted, convicted and punished. If the agent acted from a sense of the duty which rests on every one to give in charge a person who he thinks has committed a felony, his conduct while commendable would in no way be connected with the defendant so as to fasten liability upon it." As we have said before the acts charged to have been committed by the agents and servants of the defendant in the third count of the declaration do not come within the scope of their general employment as set forth in the authorities, and no special authority for doing these, or ratification of them is alleged.

We think that the demurrer to this count of the declaration, as well as to the others was properly sustained.

The judgment of the Circuit Court is affirmed.

SHACKLEFORD, C. J., AND TAYLOR, COCKRELL AND WHITFIELD, J. J., concur.