| 13 | 319 |
| 66 | 519 |

# HALL *against* THE CONNECTICUT RIVER STEAMBOAT COMPANY.

*A* deposition taken *ex parte* being offered in evidence, it appeared that the witness was incompetent by reason of interest, unless his competency was restored by a discharge ; that a discharge was made and signed by the party offering the deposition, bearing the same date and appended thereto ; and the witness testified in his deposition that he had been discharged before he testified ; but it was not otherwise shewn when the discharge was made, or that it had ever been delivered to the witness ; it was held, that such deposition was inadmissible.

Though where the interest of a witness appears from his testimony alone, it may be further shewn by him that such interest has been removed ; yet where his interest is admitted, or is proved by other witnesses, his testimony is no more admissible to shew a restoration of his competency than as evidence in chief.

*New-London,*
*July, 1839.*

Hall
*v.*
Conn. River
Steamboat Co.

Where the plaintiff, a passenger in a steamboat from *Hartford* to *New-York*, in an action against the owners for injuries sustained by him through the negligence of the master, having proved that, on the arrival of the boat in the dock at *New-York*, the chain-box used to keep the boat in trim, was so insufficiently secured that it rolled across the deck, and striking against the plaintiff threw him overboard, whereby one of his legs was broken, and his body bruised, offered further evidence to prove that after he was taken from the water, and while sitting upon the wharf, he applied to the master for some of his men to assist him into a carriage, who refused, saying that he had enough for his men to do on board; it was held, that such evidence was admissible, 1. because such conduct of the master was part of the transaction in question; 2. because the evidence was proper for the purpose of showing the damage sustained.

A carrier of passengers is bound to use the highest degree of care that a reasonable man would use.

THIS was an action on the case against the defendants, as owners of the steamboat *Bunker-Hill*, and carriers for hire between *Hartford* and *New-York*, for injuries sustained by the plaintiff, a passenger on board such steamboat, through the want of proper care in the servant of the defendants.

The cause was tried at *Norwich, March* term, 1839, before *Bissell*, J.

On the trial, the defendants offered in evidence the deposition of *George Barber*, who, it was admitted, was interested in the event of the suit, and an incompetent witness, unless his interest was removed, and his competency restored, by a discharge from the defendants. The deposition was taken in the city of *Hartford*, on the 25th of *March*, 1839, in the absence of the plaintiff, who had no notice to be present. The discharge was dated the same day, and was appended to the deposition; and the witness swore in his deposition, that it was executed before he testified, but there was no other proof of this fact, or that it was then in his possession. The court, on an objection taken by the plaintiff, decided, that this evidence was not sufficient to prove that the witness was discharged when he testified, and on that ground rejected the deposition.

*Thomas B. Sanford* was captain of the steamboat *Bunker-Hill*, and had charge of her for the defendants, at the time of the injury complained of. The plaintiff introduced evidence to prove, that when the boat arrived at the dock at *Peck-Slip*, in the city of *New-York*, the chain-box, which was used on her deck, to keep her in trim, was so insufficiently secured, that it rolled across the deck, and, striking against the plaintiff, dashed

him into the water, by which means one of his legs was bro- <span style="float:right">*New-London,* July, 1839.</span>
ken, and his body much bruised.  He then offered further
evidence to prove, that after he had been taken from the dock <span style="float:right">Hall</span>
and while sitting on the wharf, he applied to Capt. *Sanford* <span style="float:right">*v.*<br>Conn. River<br>Steamboat Co.</span>
to allow some of his men to assist him into a carriage, who
replied, that he had enough for his men to do on board, and
otherwise treated him in a contemptuous and inhuman man-
ner.   To the admission of this evidence the defendants ob-
jected ; but the court suffered it to go to the jury.

The court instructed the jury, that the defendants having
received the plaintiff on board their boat, as stated in the
declaration, they were bound to employ ordinary care and
diligence in conveying him safely ; that by ordinary care, in
this case, they were to understand the highest degree of care
which a reasonable man would use ; and that if the chain-box
was not secured in a reasonable manner, and the plaintiff had
thereby sustained the injury complained of, he was entitled to
recover.

The jury returned a verdict for the plaintiff ; and the de-
fendants moved for a new trial.

*Goddard* and *W. P. Cleaveland*, jun., in support of the
motion, contended, 1. that the deposition of *Barber* should
have been received.   In the first place, the facts, that the
discharge bore date the same day as the deposition,
and that it was appended to the deposition, afforded a
fair presumption, as a matter of fact, that it was given before
the witness testified.   Secondly, such was the legal presump-
tion, this course being according to law.   To assume the con-
trary, is to infer, without proof, that the magistrate did not do
his duty, in violation of the maxim *Omnia præsumuntur rite,*
&c.   This maxim is at least as applicable to a justice of the
peace in the taking of a deposition, as to an officer in the levy
of an execution.   *Booth* v. *Booth,* 7 *Con. Rep.* 350.   *Whittle-
sey* v. *Starr,* 8 *Con. Rep.* 134.   Thirdly, the witness, in the
course of his examination, testified that the discharge was
duly given, and for this purpose his testimony was admissible.
*Butcher's Company* v. *Jones,* 1 *Esp.* 160.   *Botham v. Swin-
gler,* 1 *Esp.* 164.

2. That the evidence introduced by the plaintiff, to shew
the want of civility and humanity in the captain, while the

New-London,
July, 1839.
———
Hall
v.
Conn. River
Steamboat Co.

plaintiff lay upon the wharf in *New-York*, was improperly received. In the first place, the master or owner is not responsible for the *wilful misconduct* of the servant, unless it be done by the command or assent of the former.  1 *Bla. Com.* 432. n. (12.)  *McManus* v. *Cricket*, 1 *East* 106.  *Ellis* v. *Turner* & al. 8 *Term Rep.* 531. 533.  *Croft* v. *Alison*, 4 *Barn. & Ald.* 590.  Secondly, to subject the master or owner, the servant, at the time the damage is occasioned, must be acting *in the course of his employment*, and within the limits of *the powers delegated* to him.  *The Mechanics Bank* v. *The Bank of Columbia*, 5 *Wheat* 326.  *Foster v. The Essex Bank*, 17 *Mass. Rep.* 508.  *Joel v. Morrison*, 6 *Car. & Payne*, 501.  *Theobold on Surety and Agency*, 304.  Thirdly, in actions of tort, the act of the servant will not bind the master to the same extent as in actions on contracts.  *Harding* v. *Greening*, 1 *Holt*, 531.

Apply these principles to the case before the court.  The duty of the defendants was to transport the plaintiff to *New-York*.  They had done so : he had arrived there : he had got upon the wharf.  It was no part of the defendant's duty, or of their servant, the captain, to help the defendant to a carriage.  This was not in the course of his employment, nor within the powers delegated.

3. That the charge of the court requiring the *highest care* which a reasonable man would use, went somewhat beyond the law, which requires only *due care*, or such care as reasonable men ordinarily exercise.  *Harris* v. *Costar* & al. 1 *Car. & Payne*, 636.  *Crofts* v. *Waterhouse*, 3 *Bing*. 319.  *Aymer* v. *Astor*, 6 *Cowen* 266.

*Strong* and *Child*, contra, contended, 1. That *Barber's* deposition was properly rejected.  As he was interested and incompetent, it is incumbent on the party offering his testimony to shew that his competency was restored at the time he testified.  This was a question of *fact*, which the court had to decide.  There was no evidence before the court that the discharge was ever delivered to the witness, or if delivered, at what time.  The defendants, not the witness, had possession of it, and brought it into court.  The deposition being taken *ex parte*, and without notice to the plaintiff, there can be no presumption in its favour beyond the direct proof.  At any rate, this court cannot say, from what appears here, that the

judge, on the trial, decided the question before him upon insuf-
ficient evidence.

   2. That the evidence of the conduct of the captain, the<br>
acknowledged agent or servant of the defendants, at the time
of the injury, was admissible. 1 *Bla. Com.* 429. *Story on
Bailment,* 265, 6. *Harlow* v. *Humiston,* 6 *Cowen* 189. 192.
*Brucker* v. *Fromont,* 6 *Term Rep.* 659. *Michael* v. *Alestree
& al.* 2 *Lev.* 172. *McManus* v. *Cricket,* 1 *East* 106. *Croft*
v. *Aleine,* 4 *Barn & Ald.* 590. *Weyland* v. *Elkins,* 1 *Holt*
217. [*Sherman,* J. Is not the only question in this part of
the case, *when* the responsibility of the defendants ceased?]
It is; and this depends upon the question, when the duties
of the captain terminated; and this again depends upon the
circumstances of the case. If the captain had thrown the
plaintiff into the dock, it was his duty to get him out. If he
had broken his bones, so that he could not walk, it was his
duty to help him into a carriage. Until this was done, he was
not *landed* in a safe and proper manner. *Dudley* v. *Smith,*
1 *Campb.* 167.

   3. That the charge of the court, as to the degree of care
required of the defendants, was correct. The highest degree
of care that a reasonable man uses, is reasonable care, and
nothing else. No rule short of this is safe for passengers, or
ultimately beneficial to the owners themselves. *Aston* v.
*Heaven & al.* 2 *Esp.* 533. *Christie* v. *Griggs,* 2 *Campb.* 79.
*Harris* v. *Costar & al.* 1 *Car. & Payne,* 636.

   WAITE, J. It was conceded, that the witness whose depo-
sition was offered, was interested in the event of the suit, and
his testimony inadmissible, unless his interest had been re-
moved by a discharge. The burden of proving that removal
prior to the taking of the deposition, devolved upon the defend-
ants. This was not done by the production of a discharge
bearing the same date with the deposition. It was equally
uncertain whether the discharge was executed before the de-
position, or afterwards. The defendants, therefore, failed to
prove that which it was incumbent on them to do, before they
had a right to have the deposition read.

   The principle that governs in the present case, has been re-
peatedly recognized by this court. Thus, where a witness in-
troduced by the plaintiff, in an action of slander, to prove the

*New-London,* speaking of the words, was unable to say whether the words
July, 1839.
—————— were spoken before or after the commencement of the suit,
Hall
*v.* his testimony was held to be inadmissible. *Scovell* v. *Kings-*
Conn. River *ley,* 7 *Con. Rep.* 284. So where a witness called by the
Steamboat Co.
plaintiff to prove a conversation with the defendant, being en-
quired of, upon cross-examination, whether the defendant did
not make certain other declarations, replied that he did, either
in that conversation, or in some other subsequent one, and in
which he could not tell; the latter declarations were holden
inadmissible. *Robinson* & al. v. *Ferry* & al., 11 *Con. Rep.* 460.

But it is said, that the discharge was appended to the depo-
sition, by the magistrate, and that circumstance furnishes pre-
sumptive evidence that the discharge preceded the deposition.
But no such presumption fairly arises. It was no part of the
magistrate's duty to annex the discharge. His reason for
doing it does not appear. He may have done so, because
he was requested to do it, by the party employing him. For
aught that appears, the release may never have gone into the
possession of the witness. It was in the possession of the
defendants at the trial, and produced by them in court; and
there was no sufficient evidence that they had ever parted with
it, except to the magistrate, for the purpose of having it en-
closed in the deposition. The deposition of a witness origi-
nally interested in the event of the suit, taken *ex parte,* is enti-
tled to no extraordinary presumptions in its favour.

Again, it is said, that the witness testified in his deposition,
that he had been discharged before giving his testimony. In
the first place, it is a sufficient answer to this claim, that this
fact does not appear from the motion. If it did, it would not
avail the defendants. If the interest of the witness appears
from his testimony alone, it may be further shewn by him that
his interest has been removed. But where his interest is
admitted, or is proved by other witnesses, his testimony is inad-
missible for any purpose, either as evidence in chief, or to shew
his own competency.

2. With respect to the testimony relative to what took
place while the plaintiff lay upon the wharf, it may be fairly
inferred from the motion, that it was a part of the transaction,
at the time the injury was received. The plaintiff was thrown
overboard from the steamboat; was taken out of the water
and placed upon the wharf; and while lying there, with his leg

broken, applied to the captain for men to assist him in getting into a carriage. It was competent for the plaintiff to prove the whole transaction. The refusal of the master to render any assistance was given while he was acting in the employment of the defendants, and within the scope of his authority.

New-London,
July, 1839.

Hall
v.
Conn. River
Steamboat Co.

But if this were not so, we think the admission of the evidence justifiable upon another ground. It was admissible to shew the damage which the plaintiff had sustained. Suppose the boat had arrived at *New-York* in the night, which is not unusual, and the plaintiff, after having been thrown overboard, in the manner he was, had been taken from the water, cold, wet, and wounded, and in consequence of the captain's refusal to render him any assistance, had been left in that situation upon the wharf, for hours, before he could procure any other assistance ; might not all that be shewn for the purpose of proving the damages. In a recent case before the court of *King's Bench* in *England*, brought against the proprietor of a stage coach for negligence, it appeared, that the plaintiff, while travelling on the coach, had been thrown off, and had her leg broken. The injury was received in the county of *Oxford*, where she remained, a considerable time ; but before she fully recovered, she removed to her home in the county of *Warwick*, and there required further medical attendance.— The *venue* was laid in the latter county ; and one question was, whether those facts supported the plaintiff's undertaking to give material evidence of some matter in issue arising in that county, so as to prevent a change to the other county. Lord *Tenterden* said, the inconvenience suffered and expense incurred in *Warwickshire*, were a damage to the plaintiff, the consequence of a wrongful act of the defendant ; and there was, therefore, a matter in issue arising in the county of *Warwick*, within the meaning of the undertaking. *Curtis* & ux. v. *Drinkwater*, 2 *Barn. & Adol.* 164.

In this case, the necessity of calling for assistance arose from the wrongful conduct of the defendants. The delay and inconvenience upon the wharf was as material as the inconvenience and expense incurred in *Warwickshire*, in the case cited.

Whether in consequence of the wound which the plaintiff had received, through the carelessness of the defendants, they were not bound to do something more than merely place him

upon a wharf, and there abandon him, without the power of removing himself;—whether, under such circumstances, the law does not require them to go farther, and do what is reasonable and necessary to place him in a situation where he might be taken care of; we do not think it necessary to determine.   One thing, however, is certain ; if the *law* does not require it, *humanity* does ; and before we could sanction as law, a doctrine so contrary to the dictates of humanity, we should require satisfactory reasons in support of it.

But the ground of the defendant's objection to the testimony is not stated in the motion.   The rule, in such case, is, that if it was admissible for any purpose, a new trial will not be granted.   And, as we are satisfied, that the evidence was admissible as a part of the *res gestæ*, and also for the purpose of shewing the damages, we deem it unnecessary to go farther.

3. It is also said, that the charge was incorrect, as it imposed upon the defendants a greater degree of care than the law required.   It is a settled rule, that common carriers of goods for hire, are liable for all losses, except such as arise from the act of God, the enemies of the State, or the default of the party sending them.   *Williams* & al. v. *Grant* & al. 1 *Con. Rep.* 487.   This rule, though one of great rigour, is founded upon public convenience and policy.   It has, however, not been applied, in its fullest extent, to carriers of persons, because they have not the same absolute controul over passengers, that they have over goods entrusted to their care. *Boyce* v. *Anderson,* 2 *Peters* 150.   *Aston* v. *Heaven* & al. 2 *Esp.* 533.   Yet both policy and the authority of adjudged cases require great care and skilful management in the transportation of passengers by common carriers.   It is right that it should be so ; that those upon whose skill and careful management not unfrequently depend the lives and safety of others, should feel themselves responsible for any want of care or faithfulness.   The instruction given to the jury, that the defendants were bound to employ the highest degree of care that a reasonable man would use, in our opinion, is fully supported upon principle and by authority.   Thus, in a case where the iron axletree of a coach of the defendant, a common carrier, broke, and in consequence, the plaintiff was thrown from the coach, and his limbs fractured, the defendant was subjected, although the maker of the coach, which was

an old one, testified that the vehicle was made of the best materials. *Alderson*, J. said, "that a coach proprietor was liable for all defects in his vehicle, which can be seen at the time of the construction, as well as for such as may exist afterwards, and be discovered on investigation; and if he were not responsible, he might buy ill-constructed or unsafe vehicles, and his passengers be without remedy." *Sharp* v. *Grey*, 9 *Bing*. 457. So *Eyre*, C. J., speaking of the liability of the proprietor of a stage coach, remarked, that the driver was answerable for the smallest negligence. *Aston* v. *Heaven* & al. 2 *Esp*. 533.

But this subject has recently undergone an examination before the supreme court of the *United States*. *Stokes* v. *Saltonstall*, 13 *Peters* 181. There, the wife of the defendant in error was greatly injured, by the upsetting of a stage-coach in which she was riding, the driver being intoxicated at the time. The circuit court instructed the jury, that if the disaster was occasioned by the least negligence or want of skill or prudence on the part of the driver, the owner of the coach was liable. The supreme court, upon a writ of error brought by *Stokes*, the owner of the coach, say that the circuit court "laid down the law correctly;"—that although a carrier of passengers does not warrant their safety at all events, yet his undertaking and liability as to them go to this extent; that he, or his agent, if he acts by one, shall possess competent skill; and that as far as human care and foresight can go, he will transport them safely."

Our advice therefore is, that no new trial be granted.

In this opinion the other Judges concurred, except WILLIAMS, Ch. J., who gave no opinion, being related to some of the stockholders in the *Connecticut River Steamboat Company*.

New trial not to be granted.