ELIZABETH VAUGHN *vs.* STEPHEN HEALY ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued November 7th—decided December 3d, 1935.

*A. Storrs Campbell* and *Hugh Meade Alcorn, Jr.,* with whom, on the brief, was *Henry P. Bakewell,* for the appellant (plaintiff).

*Joseph F. Berry,* for the appellee (defendant Healy).

BANKS, J. Defendant Healy was a common carrier operating a line of busses between Hartford and Springfield. On December 30th, 1934, the plaintiff

was standing by a pole marked "Bus Stop" on the east side of Enfield Street in the town of Enfield, waiting to take a bus to Springfield. At this point the street was made up of two strips of concrete, each ten feet in width, and on each side of the concrete were hard shoulders covered with tar, varying from eight to ten feet in width which the plaintiff, in her claim of proof, states were not a part of the traveled portion of the highway. The plaintiff was standing upon a grass covered bank adjoining the shoulder of the road and about eighteen inches higher than the road. As the bus approached the plaintiff signalled it to stop, and in response to the signal the driver slowed down and drew over to the right side of the road and stopped opposite the spot where plaintiff was standing, with the right wheels of the bus either very close to the easterly edge of the concrete or a foot or two on the tar shoulder. As the plaintiff was approaching the bus across the shoulder of the road the automobile of the defendant Boisvert, which was approaching from the rear of the bus, skidded upon the ice which covered the road, struck the rear bumper of the bus, and careened and struck the plaintiff.

Upon these facts, as to which there was little dispute, except that the defendant claimed that the bus came to a stop entirely on the tar shoulder of the road within two or three feet of the grass embankment, the plaintiff claimed that she had become a passenger, and requested the court to charge the jury that if, with the intention of taking passage in the bus, she had placed herself in a position to do so and given a signal of her intention, which the bus driver had acknowledged by stopping the bus to permit her to enter it, the relationship of carrier and passenger had arisen, and that the defendant was bound to exercise the highest degree of care and skill in furnishing her a safe

place in which to board the bus. The court did not so charge but did charge, in substance, that the facts indicated that the plaintiff was not a passenger but merely a traveler on the highway to whom the defendant owed merely the duty of exercising reasonable care under the existing circumstances. The plaintiff excepts to the refusal to charge as requested and to the charge as given.

The charge of the court was correct. "A common carrier is bound to exercise a high degree of care toward those who have put themselves under his care as passengers; but not until they have thus put themselves under his care. Up to that time, although they may have contracted with him for their future transportation, he owes no more care to them than to any third party. His special duty begins when, by coming upon his premises, or in the act of entering his vehicle, the actual relation of passenger to carrier is assumed." *Donovan* v. *Hartford Street Ry. Co.*, 65 Conn. 201, 214, 32 Atl. 350. In that case we said that the fact that the plaintiff had signalled the driver of a street car to stop, that the latter had seen and responded to the signal, and that the plaintiff had advanced upon the crosswalk for the purpose of entering the car, was not sufficient to establish the relation of passenger and carrier. Our law does not require a street railway company to exercise a higher standard of care than that which is reasonable to avoid injury to a prospective passenger who is waiting to board a car at a regular stopping place. *DeCicco* v. *Connecticut Co.*, 117 Conn. 677, 678, 168 Atl. 879; *Sacks* v. *Connecticut Co.*, 109 Conn. 221, 228, 146 Atl. 194. A present intention to become a passenger does not make the person who is approaching the car with that intention a passenger, nor change as to him the degree of care to be exercised by a street railway company with reference to others

who are using the highway. *Duchemin* v. *Boston Elevated Railway Co.*, 186 Mass. 353, 356, 71 N. E. 780. See cases collected in annotation in 75 A. L. R. 286.

The plaintiff contends that cases involving the status of a prospective passenger upon a trolley car are not applicable in considering that of one intending to become a passenger upon a motor bus since the trolley car moves upon fixed tracks while the motor bus may, and may be required to, draw up to the curb or the side of the traveled way to take on and discharge passengers. The pole near which the plaintiff stood when she signalled the bus indicated the point at which busses would stop upon signal in the same manner as white poles indicate the stopping points of trolley cars. It is not claimed that it stood upon premises owned or controlled by the defendant, and the shoulder of the road where plaintiff was struck was a part of the untraveled portion of the highway over which the defendant had no control. While she was crossing the shoulder of the road with the intention of entering the bus which had stopped at the edge of the concrete she stood in the same relation to the bus as one who steps from the curb with the intention of boarding a trolley car which has stopped in response to his signal. In neither case is the prospective passenger upon premises under the control of the carrier, and in neither case has he placed himself under its care prior to the time when he is in the act of entering the vehicle. Prior to that time the relation of carrier and passenger has not come into existence, and the carrier owes the prospective passenger only the duty to exercise reasonable care proportionate to the danger involved in the situation. *Moyles* v. *Connecticut Co.*, 115 Conn. 80, 83, 160 Atl. 307. Whether, under the conditions existing in the present case, such care required the driver of the bus to stop close to the bank

upon which the plaintiff was standing, was correctly submitted by the court to the jury as a question of fact for their determination.

In *Roden* v. *Connecticut Co.*, 113 Conn. 408, 155 Atl. 721, cited by the plaintiff, a boy seven years old was a passenger in defendant's bus, was invited to alight in the traveled portion of the highway at a time when automobiles were approaching in such a way as to endanger him as he stepped from the bus, and when, had the driver of the bus looked with any care to the rear, he must have seen them. We held that the jury could reasonably reach the conclusion that the defendant failed to exercise that high degree of care which it owed the plaintiff as a passenger to afford him a safe place in which to alight. In that case we said (p. 410): "When, however, the duty of the carrier to provide a safe place to alight has been fulfilled and the passenger has left the vehicle it ceases to owe him any other duty than that which it owes to any person coming within the range of its activities, not to do him injury by a failure to exercise reasonable care." We referred to *Powers* v. *Connecticut Co.*, 82 Conn. 665, 669, 74 Atl. 931, where we said: "A passenger on a street-car ceases to be such when, at the end of his trip, he steps from the car upon the street. He then becomes a traveler upon the highway, and those responsible as common carriers for the due operation of the railway are not responsible as such for his safe passage across the road." The question involved in the *Roden* case was as to the performance of the duty which the carrier owed to the plaintiff who was concededly a passenger. The question as to when that relationship came into existence was not present.

The plaintiff offered to produce in evidence Rule 16 of the Public Utilities Commission Regulations, which reads as follows: "No motor bus shall stop to receive

or discharge passengers at any other place than the curb or side of the traveled way or regularly established loading places, when same are accessible." The trial court excluded the offer on the ground that there was no curb or regularly established loading place at this point, and that the plaintiff's evidence definitely established that defendant's bus stopped on the side of the traveled way. The plaintiff excepts to this ruling and also to the refusal of the trial court to charge as to this rule as requested by her. It is not claimed that there was a curb or regularly established loading place at the point where the bus stopped. The only portion of the rule applicable was that which forbade the stopping of a bus to receive or discharge passengers at any other place than "the side of the traveled way." In the finding of facts which the plaintiff offered evidence to prove and claimed to have proved it appears that the bus stopped with its right wheels very close to the easterly edge or traveled portion of the highway or possibly a foot or two onto the tar shoulder, also that the tar shoulder was not a part of the traveled portion of the highway. It thus definitely appears from the plaintiff's own claim of proof that there was no violation of the rule. To have admitted the rule in evidence or charged the jury as to it would have served no useful purpose, but would merely have introduced an unnecessary complication into the trial of the case. The court did not err in its ruling or in its refusal to charge as requested.

There is no error.

In this opinion the other judges concurred.