KEITH A. HUNT *v*. WILLIAM J. CLIFFORD ET AL.

KING, C. J., MURPHY, ALCORN, COMLEY and SHANNON, Js.

Argued March 4—decided April 1, 1965

*Edward J. Quinlan, Jr.,* for the appellants (defendants).

*J. Warren Upson,* with whom was *Donald McPartland,* for the appellee (plaintiff).

KING, C. J. On April 13, 1962, the plaintiff was a passenger in a Volkswagen bus owned by the defendant Dwight F. Bennett and operated by his employee, the defendant William J. Clifford. The plaintiff was sitting at the outer end of the middle seat next to a pair of doors about in the center of the right side of the bus. These doors opened outward and were operated by lowering a handle on one of them. As the bus made a left turn, the door next to the plaintiff opened, and he fell onto the highway and suffered the injuries out of which this suit

arose. At the time of the accident, the plaintiff, a pupil in the kindergarten class, was being transported home from school, pursuant to a contract between Bennett and the board of education of the town of Bethlehem.

Although the Volkswagen bus was not the type regularly used to transport the children, there is no claim that its use was unauthorized under the contract. The sole claim on this appeal is that the trial court erred when it charged the jury that the operator of a school bus "is required to use the utmost care for the safety of . . . young children which is consistent with the nature of the business, to guard them against dangers from any source which may naturally and reasonably be expected to occur in view of all the circumstances and of the number and character of the persons with whom they will be brought in contact." The charge as given generally followed the lines of a charge applicable to a common carrier of passengers as set forth in cases such as *Yu* v. *New York, N.H. & H.R. Co.*, 145 Conn. 451, 455, 144 A.2d 56.

A common carrier of passengers undertakes to carry for hire, indiscriminately, all persons who may apply for passage, provided there is sufficient space or room available and no legal excuse exists for refusing to accept them. 14 Am. Jur. 2d, Carriers, § 734. Since passengers were not accepted on this school bus indiscriminately but were restricted to pupils embraced in the contract of transportation, the bus was not being operated as a common carrier of passengers. See *Ace-High Dresses, Inc.* v. *J. C. Trucking Co.*, 122 Conn. 578, 581, 191 A. 536. Indeed, the plaintiff quite properly does not claim that this school bus was being operated as a common carrier in fact. His position is that the reason a common

carrier is held to owe to its passengers the highest standard of care is that the passengers have no choice in the selection of the vehicle or its operator and that this reason applies equally in the case of this plaintiff as a passenger on the school bus. From this contention, the plaintiff argues that the common carrier standard of care should apply in this case.

In the first place, the passenger's lack of any power of selection is not a characteristic peculiar to the common carrier-passenger relationship. Thus, it could hardly have been a controlling factor in causing the especially high standard of care to be imposed on common carriers of passengers. For instance, a person injured and unconscious may be transported to a hospital in an ambulance or in a car operated by a passing motorist. And a person under arrest may be transported to the police station in a police car. In neither instance does the person transported have any power of selection as to vehicle or operator. Yet, it would hardly be claimed by anyone that because of this lack of power of selection, the standard of care required should be that of a common carrier of passengers.

Secondly, this lack of power of selection does not appear, historically, to have constituted a reason for the imposition of the high standard of care on common carriers of passengers. That standard seems to have been derived from the strict standard applicable to common carriers of goods which in turn stemmed from a desire to protect shippers from fraud on the part of such common carriers. 14 Am. Jur. 2d, Carriers, § 509. It was long ago settled that common carriers of goods "are liable for the loss of goods entrusted to their care, in all cases, except where the loss arises from the act of God,

the enemies of the state, or the default of the party sending them." *Williams* v. *Grant,* 1 Conn. 487, 491. This same standard of care was extended to common carriers of passengers except that it was necessarily made less rigorous "because . . . [common carriers] have not the same absolute controul over passengers, that they have over goods entrusted to their care." *Hall* v. *Connecticut River Steamboat Co.,* 13 Conn. 319, 326. The reason for this extension of the standard of care was that it would be incongruous, except as necessary, to impose upon a common carrier of passengers a lower standard of care than that imposed on a common carrier of goods. *Hall* v. *Connecticut River Steamboat Co.,* supra. Consequently, the standard of care required of common carriers of passengers was made, insofar as practicable, as high as that applicable to common carriers of goods. This historical development furnishes no ground for extending that standard of care to the transportation of passengers by others than common carriers in fact.

Thirdly, we have restricted the application of the common carrier standard of care to common carriers in fact and have consistently refused to extend it to other modes of passenger conveyance. *Stratton* v. *J. J. Newberry Co.,* 117 Conn. 522, 525, 169 A. 56 (escalator) ; *Firszt* v. *Capitol Park Realty Co.,* 98 Conn. 627, 635, 120 A. 300 ("aeroplane swing" amusement device) ; *Downs* v. *Seeley,* 76 Conn. 317, 320, 56 A. 502 (elevator). We have also refused to apply the standard to a common carrier except when the actual relationship of common carrier and passenger exists. *Vaughn* v. *Healy,* 120 Conn. 589, 592, 182 A. 166; *Roden* v. *Connecticut Co.,* 113 Conn. 408, 410, 155 A. 721.

In short, we find no justification for the plaintiff's

claim that the standard of care applicable to passengers in a school bus operated under private contract should be the same as that applicable to passengers being transported by a true common carrier.

In the instant case, the standard of care properly to be imposed on the defendants in the maintenance and operation of this school bus was reasonable care, that is, the care of an ordinarily prudent person under the same or similar circumstances. But the amount of care required to constitute reasonable care varies with the surrounding circumstances and must be proportioned to the dangers reasonably to be anticipated. *Goodman* v. *Norwalk Jewish Center, Inc.*, 145 Conn. 146, 151, 139 A.2d 812. In the instant case, the dangers incident to the transportation of passengers who are young children, as was this plaintiff, would obviously be different and in some respects greater than if the passengers were adults. This in turn would require a greater amount of care, in order to measure up to the standard of reasonable care, than would have been required had all passengers been adults. *Yu* v. *New York, N.H. & H.R. Co.*, supra; *Roden* v. *Connecticut Co.*, supra.

It may be open to question whether, in view of the plaintiff's extreme youth, there would be any substantial difference in the amount of care required whether the common carrier standard or the reasonable care standard was applied. But the fact remains that the defendants were entitled to have their measure of duty to the plaintiff correctly stated, and this the court failed to do.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.