467 So.2d 1076 (1985)
Ruth Ann NAZARETH, Appellant,
v.
HERNDON AMBULANCE SERVICE, INC., Appellee.
No. 83-1323.
District Court of Appeal of Florida, Fifth District.
April 25, 1985.
*1077 Roger D. Helms of Troutman, Parrish, Williams & Blankenship, P.A., Winter Park, for appellant.
Neal P. Pitts of Pitts, Eubanks & Ross, P.A., Orlando, for appellee.
SHARP, Judge.
Ruth Ann Nazareth appeals from a summary judgment determining that Herndon Ambulance Service, Inc. is not liable for a sexual assault and battery which allegedly occurred while appellant was being transported by ambulance from her home to Florida Hospital North and which was allegedly perpetrated by Herndon's employee who was attending her in the passenger portion of the ambulance. We must construe the record in a light most favorable to Nazareth, resolving all conflicting statements in her favor,[1] and reading the complaint to determine whether the allegations are sufficient to state a cause of action against Herndon.[2] Viewed in this light, we find that the record presents triable issues against Herndon based on vicarious liability and breach of Herndon's implied contract to safely transport its passenger, Nazareth. Accordingly, we reverse the summary judgment.
The record establishes that at the time of the alleged tort Herndon was licensed and conducting the business of transporting people requiring ambulance service in Orange County, Florida. One evening in 1982, Nazareth's husband, a medical doctor, called Herndon to take his wife to the hospital. The company dispatched an ambulance staffed by Barrett, an emergency medical technician and driver, and a female employee with similar training but less experience. The female attendant drove the ambulance at Barrett's suggestion, and Barrett tended to Nazareth, who was vomiting and ill, in the passenger compartment. Nazareth claimed that while she was strapped onto the stretcher and too weak to defend herself, she was sexually assaulted by Barrett. She reported the incident to her husband at the hospital, and when confronted later the same evening by the Nazareths in Ruth Ann's hospital room, Barrett allegedly admitted the charges.
The trial court granted Herndon's motion for summary judgment on the ground there was no genuine issue as to any material fact bearing upon the liability of Herndon. We agree with the trial court as to those theories in Nazareth's complaint based on Herndon's negligence and punitive damages, but disagree as to those allegations relating to vicarious liability and breach of implied contract.[3]
The record conclusively establishes no basis to charge Herndon with negligence in hiring Barrett, and nothing to put Herndon on notice of any tendencies on Barrett's part to commit such an assault. Barrett's record as an employee for Herndon was excellent; and there was nothing in Barrett's past to indicate he would commit *1078 such an act.[4] The fact that Herndon did not make a detailed check of Barrett's background before hiring him, therefore, was irrelevant since if such a check had been made nothing would have been discovered.[5] Nor do we think Nazareth's contention that Herndon should have had a policy that only female attendants attend female passengers has any merit in view of the evidence in the record that no such policy exists anywhere in the ambulance business, and that it would not be feasible. Were this theory pled as a separate count, a partial summary judgment would have been appropriate as to it.
In addition, the punitive damage claim by Nazareth against Herndon could also have been properly disposed of by the trial judge, since the record shows the sexual assault was clearly not within the scope of Barrett's employment, and it was not directed or authorized by Herndon. Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla. 1981); Commodore Cruise Line, Ltd. v. Kormendi, 344 So.2d 896 (Fla. 3d DCA), cert. denied, 352 So.2d 172 (Fla. 1977).
Generally, sexual assaults and batteries by employees are held to be outside the scope of an employee's employment and, therefore, insufficient to impose vicarious liability on the employer. See City of Green Cove Springs v. Donaldson, 348 F.2d 197 (5th Cir.1965); Bozarth v. Harper Creek Board of Education, 94 Mich. App. 351, 288 N.W.2d 424 (1979); 6 Am.Jur.2d Assault & Battery § 139 (1963). The general rule is that an employer cannot be held liable for the tortious or criminal acts of an employee, unless they were committed during the course of the employment and to further a purpose or interest, however excessive or misguided, of the employer. See Weiss v. Jacobson, 62 So.2d 904 (Fla. 1953); De Jesus v. Jefferson Stores, Inc., 383 So.2d 274 (Fla. 3d DCA 1980); Lay v. Roux Laboratories, Inc., 379 So.2d 451, (Fla. 1st DCA 1980); Martin v. United Securities Services, Inc., 373 So.2d 720 (Fla. 1st DCA 1979); Andrews v. Norvell, 65 Ga. App. 241, 15 S.E.2d 808 (1941); W. Prosser, Torts, § 70 at 464, 465 (4th ed. 1971).
However, some exceptions to this rule appear in the case law. One is summarized by Restatement (Second) of Agency § 219(2)(d) (1958): where "the servant purported to act or speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation." A Florida case applied this principle in a fraud case. See Industrial Insurance Company of New Jersey v. First National Bank of Miami, 57 So.2d 23 (Fla. 1952).
Another better established exception to the general rule is where the employer is a common carrier for hire to the public, and the tort or attack is by an employee upon a passenger while the contract for transport is being accomplished. See Jenkins v. General Cab Company of Nashville, 175 Tenn. 409, 135 S.W.2d 448 (1940); Restatement (Second) of Agency, § 214 (1958); 9 Fla.Jur.2d Carriers § 116; 139 (1979). Such circumstances were clearly established by the record in this case. Herndon was licensed and generally operating an ambulance business in Orange County, Florida; Nazareth was a paying passenger; and the tort allegedly took place en route to the hospital.
Florida has long recognized vicarious liability on the part of a carrier-employer for torts of employees under such circumstances without regard to whether they were committed within the scope of employment. *1079 See Miami Transit Company v. Yellen, 156 Fla. 351, 22 So.2d 787 (1945) (bus company); Commodore Cruise Line Ltd. (cruise ship owner); Jacobs v. Harlem Cab, Inc., 183 So.2d 552 (Fla. 3d DCA 1966) (taxi cab company); Henderson v. Tarver, 123 So.2d 369 (Fla. 2d DCA 1960) (taxi cab company). In Wright v. Georgia Southern and F. Ry. Co., 66 Fla. 510, 63 So. 909 (1913), the court denied liability because the plaintiff was a trespasser, but it recognized the result would have been otherwise, had a paying passenger been involved:
The general rule is that a carrier can be held liable for the torts of its servants only when they are done by the servant in the course of the servant's duty, and in his undertaking to perform it, but not when they are acts of willful misconduct not done in the line of duty... . Where the relation of passenger and carrier exists, a stringent rule of liability for the tortious acts of the latter's agents prevails. A passenger is entitled to protection against violence, abuse, or an assault or battery upon the person of the passenger by the agents of a carrier, though such acts may be unauthorized by the carrier and prompted by vindictiveness on the part of the agent or servant.
Wright at 912.
The rationale for imposing vicarious liability on the employer in such cases is the existence of an implied contract between the victim-passenger and the carrier for safe passage, free from attack by the carrier's employees. See Co-op Cab Co., Inc. v. Singleton, 66 Ga. App. 874, 19 S.E.2d 541 (1942); St. Michelle v. Catania, 252 Md. 647, 250 A.2d 874 (1969). Once the undertaking to transport a passenger has begun, this extraordinary duty to the passenger arises, and does not terminate until the journey is complete. Henderson; Loftin v. Florida Cities Bus Company, 159 Fla. 514, 32 So.2d 166 (1947). This is characterized in terms of tort liability as a non-delegable duty owed by the employer.[6] These two causes of action, one in tort and one in contract, may coexist in an action against a carrier. See Banfield v. Addington, 104 Fla. 661, 140 So. 893 (1932).
The source of this high standard of care imposed on carriers is in part the nature of the carrier's undertaking whereby the passenger must entrust his or her bodily safety to the care and control of the carrier's vehicle and employees, and he or she cannot freely or independently walk away, once the undertaking has commenced.[7] This situation creates a special duty to protect. This is the basis for such tort liability having been applied in other similar situations not involving carriers, such as innkeepers, hospitals, and pullman car companies. See Berger v. South Pacific Company, 144 Cal. App.2d 1, 300 P.2d 170 (1956) (Pullman Company); Danile v. Oak Park Arms Hotel, Inc., 55 Ill. App.2d 2, 203 N.E.2d 706 (1964) (hotel guest); Stone v. William M. Eisen Company, 219 N.Y. 205, 114 N.E. 44 (1916) (Orthepedic brace company patient); Prosser, supra, § 70 at 465; Note, The Growth of Vicarious Liability for Willful Torts Beyond the Scope of Employment, 45 Harv.L.Rev. 342 at 344 (1931); Annot., 10 A.L.R.3d 619 (1966); Annot., 34 A.L.R.2d 372 at 379-84 (1984). As the court said in Vannah v. Hart Private Hospital, 228 Mass. 132, 117 N.E. 328, 330 (1917):
The decision ... does not depend upon the fact that the defendants ... were common carriers. The decision would have been the same had the assault and battery occurred on an excursion steamer in place of upon a steamer operated by a common carrier... . The doctrine ... applies whenever there is a contract between the plaintiff and defendant by force of which the defendant is to furnish *1080 for the plaintiff's comfort the services of its, the defendant's employees... .
Whether or not an ambulance business is properly characterized as that of a "common carrier" for purposes of establishing liability for willful torts committed by an employee has not, to our knowledge, ever been decided in Florida. In some jurisdictions ambulances are deemed to be common carriers and in others they are not. Annot., 21 A.L.R.2d 910 (1952). The differences seem to depend upon the wording of the particular state's statutes.
Chapter 323, Florida Statutes (1981) distinguishes private contract carriers from common carriers. A private contract carrier "means any motor carrier engaged in the transportation of persons ... over the public highways of this state who is not a common carrier but transports such persons ... under contract for one or more persons for compensation ... where such carriage consists of continuous or recurring carriage under the same contract." § 323.01(8), Fla. Stat. (1981) (emphasis supplied). There is no continuous contract involved in this case. A common carrier is defined as "any person engaged in motor carrier transportation of persons ... for compensation over the public highways of this state who holds his service out to the public and provides transportation over regular or irregular routes." § 323.01(19), Fla. Stat. (1981).
It is clear that under these statutory definitions, an ambulance business fits more closely the statute's definition of common carrier than that of private carrier, since an ambulance business is not operating under a single continuous or recurring contract, see 9 Fla.Jur.2d Carriers §§ 1, 2 (1979); 13 Am.Jur.2d Carriers §§ 2, 8 (1964), but it is in the general transport business available to the public over irregular routes. This is true whether or not Herndon was free to accept or reject Dr. Nazareth's call, as it claims it was, since the Florida Statute does not make that a significant factor.[8]
Were ambulances not specifically excluded from the requirements of Chapter 323 by section 323.29(7), we would conclude they were motor carriers subject to regulation under that chapter. This exclusion was apparently designed to exempt certain classes of motor carriers from regulation by the Public Service Commission because they were more appropriately regulated by local governmental agencies. Taxis and local buses are also excluded by the same provision that excludes ambulances. Their exclusion from Chapter 323 does not mean such vehicles are not common carriers for tort liability purposes.
In Florida, ambulances are regulated and controlled pursuant to section 401.25, Florida Statutes (1981). This statute divides regulation and supervision of ambulances between the state and local governments. The business must apply and obtain a license from the Department of Health and Rehabilitative Services and it must obtain a certificate of convenience and necessity from the county government. The kinds of equipment and the minimum training required for attendants are specified by HRS rules and regulations. This kind of regulation by state or local government is consistent with their being classified as a "common carrier." 13 Am.Jur.2d Carriers §§ 21-23 (1964).
In our view ambulances should be subject to requirements as stringent as any other traditional common carrier such as a local bus or taxi cab. This is fitting since the people being transported by ambulance are expected to be ill and disabled. Normally, these circumstances subject carriers undertaking to transport such persons, to an even higher degree of care. Loftin. We can think of no reasonable basis to impose on ambulances a less stringent duty of care than is imposed on buses and taxi companies.
*1081 We conclude that ambulances in Florida are common carriers for purposes of imposing on them a high degree of care owed their passengers during the fulfillment of their contract of carriage.[9] This duty includes vicarious liability for the torts of employees visited upon a passenger while the contract for transport is being accomplished. We therefore do not reach the question of whether such vicarious liability would be imposed on Herndon if it were not a "common carrier," although the technical classification appears to us less significant than the nature and scope of its undertaking on behalf of its users.
Because Nazareth's complaint sufficiently alleged facts supported by the record, creating viable causes of action against Herndon for vicarious liability and breach of implied contract of safe carriage, we reverse the final summary judgment and remand this cause for trial on the merits.
REVERSED AND REMANDED.
FRANK D. UPCHURCH, Jr., J., concurs.
COBB, C.J., concurs in part and dissents in part, with opinion.
COBB, Chief Judge, concurring in part and dissenting in part:
I concur with the majority's affirmance of the trial court's summary judgment in regard to the plaintiff's claims based on Herndon's alleged active negligence and for punitive damages. I dissent as to a reversal in regard to the remaining claims.
The allegations in the plaintiff's complaint are not separated into numbered counts. The claims are separated by headings  negligence, vicarious liability, and implied contract. The count based upon vicarious liability is not predicated on strict liability. It is predicated on allegations that Barrett's wrongful act of sexual assault occurred while he "was performing services ... which he was employed to perform or while the employee was acting at least in part because of a desire to serve his employer, and was doing something that was reasonably incidental to his employment... ." This allegation, based on traditional master-servant concepts,[1] clearly was negated by the evidence, and summary judgment in regard thereto was eminently correct. Barrett's sexual attack was in no way connected with, or incidental to, Herndon's business. See Weiss v. Jacobson, 62 So.2d 904 (Fla. 1953); W. Prosser, Torts, § 70 at 464, 465 (4th ed. 1971). This fact and this principle of law are acknowledged in the majority opinion, hence the reversal of the summary judgment in regard to the count based upon vicarious liability is paradoxical.
The count based upon breach of implied contract alleged that Herndon, a private ambulance company, impliedly contracted to transport Nazareth "free of physical insult, battery or obscene invasion to (her) person," and that this contract was breached by its employee's sexual assault upon her. In effect, this is an allegation that Herndon is strictly liable for the acts of its employees irrespective of the fact that the tort committed by Barrett was an independent one unrelated to Herndon's business. In other words, the underlying factual assumption in regard to the relationship between Barrett's tort and Herndon's business is the converse of that in the count based upon vicarious liability. Thus, it is illogical for the majority to engraft its common carrier theory upon both counts. *1082 Surely, it will come as a surprise to the plaintiff, who included it in neither.
Nowhere in the plaintiff's complaint is there an allegation that Herndon was acting as a common carrier. Nor has the appellant presented any argument to the trial court, or to this court on appeal, urging that Herndon was a common carrier. The argument in appellant's brief in regard to implied contract is simply that there was a contractual agreement whereby Herndon agreed to transport Nazareth to the hospital safely and did not do so. This argument assumes an indemnification of plaintiff's safety while in the ambulance, an indemnification implied in law. No authority whatsoever for that proposition is cited in the appellant's brief  because none exists. A contract for transportation is not, ipso facto, one indemnifying the safety of the passenger. 13 Am.Jur.2d., Carriers, § 516. The problem is not merely the omission from the pleadings of the talismanic words "common carrier." Allegations in regard to the indicia supporting that characterization are also absent  e.g., the terms of Herndon's license, the extent and area of its services, its representations to the public, the latitude of its contractual freedom, the regularity of its routes, and the uniformity of its charges. See 9 Fla. Jur.2d Carriers, § 3.
Despite the absence of allegata, probata, or legal argument at trial or on appeal relating to the question of whether Herndon is liable as a common carrier in this case, the majority opinion ignores that omission and determines that Herndon is strictly liable as a common carrier for Barrett's tort, and remands for trial on the issue of the factual liability vel non of Barrett  hence Herndon. Our consideration of such a non-issue is contrary to established case law. See Clark v. Department of Prof. Reg., Board of Medical Examiners, 463 So.2d 328 (Fla. 5th DCA 1985); In the Interest of K.A.F., 442 So.2d 365 (Fla. 5th DCA 1983); Hegeman-Harris Co., Inc. v. All State Pipe Supply Co., Inc., 400 So.2d 1245 (Fla. 5th DCA), review denied, 411 So.2d 380 (Fla. 1981). See also McCarter v. State, 463 So.2d 546 (Fla. 5th DCA 1985).
It is patently clear from the record that Herndon's liability as a common carrier is not a legitimate issue in this case. Even if it were, the determination that Herndon is a common carrier is wrong. As pointed out in the majority opinion, a determination as to whether an ambulance is a common carrier is governed in most states by statute, and the classification is different depending upon the wording of state statutes. Annot., 21 ALR2d 910, Ambulance-Injury to Passengers (1952). No Florida case, statute, or regulation has ever classified a privately owned ambulance, which operates on an independent contractual basis, as a common carrier. In Florida, ambulances are licensed pursuant to chapter 401, Florida Statutes (1983), and they are not designated therein as common carriers. Chapter 323, Florida Statutes, which has now been repealed,[2] authorized the licensing of common carriers and motor carriers[3] for compensation by the Public Service Commission. Ambulances were never licensed under Chapter 323, and they were specifically exempted therefrom. See § 323.29(7), Fla. Stat. (1981).
In Hollander v. Smith & Smith, 10 N.J. Super. 82, 76 A.2d 697 (1950), review denied, 6 N.J. 399, 79 A.2d 108 (1951), the court held that a corporation operating an ambulance service was not a common carrier where the corporation conducted a private ambulance service and reserved the right to reject specific calls. See also Hunt v. Clifford, 152 Conn. 540, 209 A.2d 182 (1965). Contrary to the assertion of the majority opinion, the pleadings and evidence herein indicate that Herndon transported Nazareth on an individual contractual basis. Nazareth does not allege, and offered no proof, that Herndon was legally obligated to accept her business. This factor, *1083 again contrary to the majority opinion, is a significant one in determining whether Herndon is a common carrier. As succinctly stated in 13 Am.Jur.2d., Carriers, § 2:
One does not have the status of a common carrier where he undertakes carriage for a particular group or class of persons under a special contractual arrangement, or for a particular person only. Nor, although one solicits patronage from the public generally, is he a common carrier where he reserves the right arbitrarily to accept or reject the offered business.
Id. at 561-62, 209 A.2d 182.
The doctrine assessing strict liability against a common carrier for the independent torts (i.e., those unrelated to the employer's business) of its employees is outmoded and unfair; this court should not expand its applicability, especially in a case where no party has asked, by pleadings or argument, that we do so. The plaintiff's cause of action, based on the factual allegations of her complaint, is an action in tort, not in contract. See Banfield v. Addington, 104 Fla. 661, 140 So. 893 (Fla. 1932). That action properly is against Barrett, not Herndon.
I would affirm the summary judgment discharging Herndon from the case.
NOTES
[1] Holl v. Talcott, 191 So.2d 40 (Fla. 1966); O'Connell v. Walt Disney World Company, 413 So.2d 444 (Fla. 5th DCA 1982).
[2] See Smith v. Reeder, 371 So.2d 718 (Fla. 3rd DCA 1979); Gallichio v. Corporate Group Service, Inc., 227 So.2d 519 (Fla. 3rd DCA 1969).
[3] Nazareth's complaint consists of 44 numbered paragraphs separated by underlined headings in caps. It is not divided into different counts and, therefore, for purposes of this summary judgment motion, we must review it as a whole to determine whether a viable cause of action is alleged by Nazareth against Herndon.
[4] Cf. Mallory v. O'Neil, 69 So.2d 313 (Fla. 1954).
[5] Riddle v. Aero Mayflower Transit Co., 73 So.2d 71 (Fla. 1954); Somatra Lines, Ltd. v. Rayne Int'l, Inc., 419 So.2d 803 (Fla. 3d DCA 1982); Williams v. Feather Sound, Inc., 386 So.2d 1238 (Fla. 2d DCA 1980), rev. denied, 392 So.2d 1374 (Fla. 1981); Wayne v. Unigard Mut. Ins. Co., 316 So.2d 581 (Fla. 3d DCA 1975); McArthur Jersey Farm Dairy, Inc. v. Burke, 240 So.2d 198 (Fla. 4th DCA 1970); Davis v. Major Oil Co., 164 So.2d 558 (Fla. 3d DCA 1964); Stevens v. Lankard, 31 A.D.2d 602, 297 N.Y.S.2d 686 (N.Y. App. Div. 1968), aff'd, 25 N.Y.2d 640, 306 N.Y.S.2d 257, 254 N.E.2d 339 (N.Y. 1969).
[6] D.C. Transit System, Inc. v. Brooks, 264 Md. 578, 287 A.2d 251 (1972); Restatement (Second) of Agency § 214 (1958); 53 Am.Jur.2d Master & Servant § 423 (1970).
[7] Annot., 34 A.L.R.2d 372, at § 7 (1954).
[8] A private carrier in contrast with a common carrier is generally distinguished by its free and arbitrary right to reject business, 13 Am.Jur.2d Carriers § 8 (1964), but that factor alone is not determinative. Merchants Transfer and Warehouse Company v. Gates, 180 Ark. 96, 21 S.W.2d 406 (1929).
[9] We respectfully disagree with the dissenting opinion that a material issue regarding Herndon's liability as a common carrier was not raised here because the words "common carrier" were not used in the complaint, where the allegations and record in this case were sufficient to make that status applicable. The theory of the cause of action need not be perfectly pled so long as there are sufficient facts pled and established by the record to create a triable issue. In such cases, summary judgment is not appropriate. See In re Estate of Starling, 451 So.2d 516 (Fla. 5th DCA), rev. denied, 458 So.2d 273 (Fla. 1984); Gallichio; cf. Hart Properties, Inc. v. Slack, 159 So.2d 236 (Fla. 1963); Rauch, Weaver, Millsaps & Co. v. Campbell-Dickey Marketing Services, Inc. 354 So.2d 403 (Fla. 4th DCA 1978).
[1] See, e.g., Columbia By the Sea, Inc. v. Petty, 157 So.2d 190 (Fla. 2d DCA 1963).
[2] See Ch. 83-84, Laws of Florida, eff. August 12, 1983.
[3] See 9 Fla.Jur.2d Carriers § 7, wherein ambulances are classed as motor carriers, as distinct from common carriers.