451 So.2d 516 (1984)
In re the ESTATE OF Chad STARLING.
Dewayne Y. STARLING and Wilma C. Starling, As Personal Representatives, Appellants,
v.
Asis SAHA and Barbara Saha, Appellees.
No. 82-1457.
District Court of Appeal of Florida, Fifth District.
May 10, 1984.
Rehearing Denied June 19, 1984.
*517 R. Lee Dorough, of Whitaker & Koepke, Orlando, for appellants.
Charles T. Wells, of Wells, Gattis, Hallowes & Holbrook, P.A., Orlando, for appellees.
PER CURIAM.
The Starlings appeal from a final summary judgment entered against them on their negligence count (Count I) and the dismissal of their attractive nuisance count (Count II). The appellants sued the Sahas after their minor son, Chad, drowned while swimming in a pond which had been excavated on the Sahas' land. Chad was an excellent swimmer, but he was caught and held under water by the suction of a hose attached to a pump, which had been left running, unsupervised, at the pond. We think the attractive nuisance count states a good cause of action and it was improperly *518 dismissed; but we affirm the summary judgment on the negligence count because the record establishes as a matter of law that the relationship between the Sahas and the operator of the pump was one of employer-independent contractor.

COUNT I: NEGLIGENCE
The record shows that Dr. Saha entered into an oral agreement with White to dig a pond on his property to water Saha's cattle. In return, White was entitled to keep or resell all the dirt. By the summer of 1980 the pond was excavated, but it needed to be squared and sloped. White arranged for Davis, another dirt broker, to do the final work, because he did not have the needed equipment. Davis started his pump running on the morning of the day Chad drowned. He left it running unattended, and was not on the property at the time Chad drowned by becoming caught in the hose. Saha did not supervise Davis or White in any manner, although he made periodic visits to the property to feed and look after his livestock.
The trial court held that the relationship between White and Davis and the Sahas was one of employer-independent contractor. The basic element in an employer-employee relationship is the right or the actual exercise of control by the employer over the details or means by which the work is performed. Farmers & Merchants Bank v. Vocelle, 106 So.2d 92 (Fla. 1st DCA 1958). In this case, Davis was clearly an independent contractor. Although he may have been negligent in leaving the pump running, his employer, Saha, has no vicarious liability for his negligence. Fisherman's Paradise, Inc. v. Greenfield, 417 So.2d 306 (Fla. 3d DCA 1982).
Further, the record establishes that appellees did not know Davis was running the pump at the time of this accident or that it was a dangerous risk to the neighborhood children who trespassed to swim in the pond. In order for there to be liability on the part of the landowner, it must be established that the landowner knew or should have known of the danger or risk to the class of persons, one of whom was injured. The Sahas did not know of the pump or any defect in the hose; nor should they have known because they were not exercising control over the pond. That control was in the hands of the independent contractor. See Winn Dixie Stores, Inc. v. Virginia Construction Company, Inc., 330 So.2d 158 (Fla. 1st DCA 1976).

COUNT II: ATTRACTIVE NUISANCE
In Count II appellants alleged that Dr. Saha and his employees knew neighborhood children entered Dr. Saha's property to swim in the excavated pond; and that the unsupervised running of the pump in the pond, with its concealed and unguarded intake hose beneath the surface involved an unreasonable risk of death to the children; and that Chad was drowned when he became caught in the hose by the suction of the pump. The lower court dismissed this count because appellants alleged that the child was attracted onto Dr. Saha's premises by the prospect of swimming in the pond rather than curiosity about the pump or hose. This view, however, overlooks the fact that the pond alone did not kill the child. The combined effect of the hose holding him and the water in the pond accomplished the drowning.
In applying the attractive nuisance doctrine, we are bound by the Florida Supreme Court's requirement that the plaintiff allege and prove that a child was lured or attracted onto the land by the condition or structure that injured him. Johnson v. Bathey, 376 So.2d 848 (Fla. 1979); Concrete Construction, Inc. of Lakeworth v. Petterson, 216 So.2d 221 (Fla. 1968). The source of this requirement is apparently the much criticized opinion by Justice Holmes in United Zinc & Chemical Company v. Britt, 258 U.S. 268, 42 S.Ct. 299, 66 L.Ed. 615 (1921).[1] However, we should not read *519 this requirement so literally that we abolish application of the attractive nuisance doctrine to concealed dangers operating in connection with conditions or other objects on property, which jointly contribute to the child's injury.
The Florida Supreme Court's cases which discuss the allurement requirement do not mandate this interpretation. In Johnson, a child was injured by a pump operating on dry land, after being attracted onto the land by the prospect of receiving surplus vegetables from a packing house. The pump alone was the cause of his injury. The discussion of the allurement plus injury element in Petterson is dictum. Petterson held that the explosion of a construction cartridge which was found and carried away by a child the previous day was too remote in time and location to impose liability on the landowner. The injury has to occur on the premises.
Allen v. William P. McDonald Corporation, 42 So.2d 706, 706 (Fla. 1949), states the rule of law which is controlling in this case:
[T]he owner of artificial lakes, fish ponds, mill ponds, gin ponds and other pools, streams and bodies of water are not guilty of actionable negligence on account of drownings therein unless they are constructed so as to constitute a trap or raft or unless there is some unusual element of danger lurking about them not existent in ponds generally. (Emphasis supplied).
The Allen court held that the complaint stated a cause of action under the attractive nuisance doctrine. The complaint alleged that a child was attracted onto the defendant's property by white sand piled around an artificial pond. It said the steep slopes and resulting drop-off into the water constituted a hidden or concealed danger. As in the case at bar, the child in Allen drowned in the pond. The combination of what attracted him, the sand plus the concealed danger (steep slopes), killed him. The court did not separate the two. Significantly, the court did not say recovery would not lie because the child was attracted by the benign white sand rather than the hidden steep slopes.
Ansin v. Thurston, 98 So.2d 87 (Fla. 3d DCA 1957), cert. denied, 101 So.2d 808 (Fla. 1958), followed Allen. In Ansin, a child was lured onto the property by banks of white sand surrounding a pit filled with water. The child evidently found a raft at the end of a dock and drowned when it tipped over while he was playing on it. The concealed danger was the sudden and steep drop-off of the sides of the pit. The white sand of the artificial pond attracted him, but the concealed danger caused his drowning. The court did not deny recovery because the child was not attracted by the hidden, steep banks. See also Larnel Builders v. Martin, 105 So.2d 580 (Fla.3d DCA 1958), cert. dismissed, 110 So.2d 649 (Fla. 1959).
Hendershot v. Kapok Tree Inn, Inc., 203 So.2d 628 (Fla.2d DCA 1967), which was relied on by the trial court, is distinguishable from the case before us, although we have trouble distinguishing it from Ansin and Larnel. In Hendershot, the court held there were insufficient allegations that "a man-made condition which involved an unusual element of extreme danger" existed in an artificial pond where a child drowned. Id. at 630. The complaint alleged the concealed danger was a sudden drop-off two feet from the edge of the water. In the instant case, the complaint alleges the existence of an extremely dangerous intake hose of sufficient size and strength to catch and hold a swimmer. A better man-made trap we cannot imagine.
The point is that if the thing that attracts a child onto the premises has concealed in its depths a dangerous object or is in a dangerous state, the attractive nuisance doctrine should apply. The first case in Florida to adopt the attractive nuisance doctrine, Stark v. Holtzclaw, 90 Fla. 207, 105 So. 330 (1925), illustrates this point.[2] *520 There, a child was attracted onto the defendant's property by a beautiful blooming magnolia tree. He climbed the tree to pick the blossoms, unaware that hidden in the foilage of the tree were wires charged with high electrical voltage. The court applied the attractive nuisance doctrine, although it could not be said the child was attracted onto the property by the wires that injured him, anymore than in the instant case the child was attracted by the pump that killed him.
Because Count II states a good cause of action, the trial court erred in dismissing it. At this juncture it is improper for us to look beyond the pleadings and affirm the dismissal because other matters in the record might sustain a summary judgment on the grounds that the workmen were independent contractors or that Dr. Saha did not know the pump was being negligently used. Green Springs, Inc. v. Calvera, 239 So.2d 264 (Fla. 1970); Vogel v. Allen, 443 So.2d 368 (Fla. 5th DCA 1983).
In any event, Florida case law does not shield a landowner from liability if a child is injured on his premises by an "attractive nuisance" created or operated on his land by an independent contractor. In Butler v. Porter-Russell Corporation, 217 So.2d 298 (Fla. 1968), a child was injured on a construction site where a building project was underway. A concrete block fell on him from a pile of blocks, which had been negligently stacked by a subcontractor. The blocks were delivered to the site at the end of a work day, when no one else was present, and the injury occurred shortly thereafter. The court reversed a summary judgment for all four defendants, the owner, the general contractor, the trucker who delivered the blocks, and the sub or materialman who supplied the blocks. The court stated:
The test to be applied in a case of this type is whether a reasonably prudent person should have anticipated the presence of children or other persons at the place where appellee created a condition that a jury could find was an `inherently dangerous condition'... .
Id. at 300. The court concluded a jury could find the defendants, or some of them, should have foreseen the possibility a block would fall on a child.
In Carter v. Livesay Window Company, Inc., 73 So.2d 411 (Fla. 1954), the court reversed a summary judgment in favor of a general contractor, and allowed the case to proceed to a jury against the general contractor and the landowner. In Carter, a child was killed on a building site when a heavy window fell on him. The window had been improperly braced by a subcontractor on the site. The court said the test was whether a reasonably prudent person should anticipate the presence of children at the place where a jury might find an inherently dangerous condition or a dangerous instrumentality was created. If an independent contractor creates an inherently dangerous condition that may be found to be an attractive nuisance, the independent contractor status does not insulate the employer from liability. See Fouraker v. Mullis, 120 So.2d 808 (Fla. 1st DCA), cert. denied, 123 So.2d 674 (Fla. 1960).
Accordingly, we affirm the summary judgment as to Count I; and we reverse the dismissal of Count II.
AFFIRMED IN PART AND REVERSED IN PART.
DAUKSCH, J., concurs.
FRANK D. UPCHURCH, Jr., and SHARP, JJ., concur in part; dissent in part, with opinions.
FRANK D. UPCHURCH, Judge, concurring in part, and dissenting in part.
I concur with Judge Dauksch in affirming the final summary judgment as to count I.
I also agree that count II states a cause of action under the attractive nuisance doctrine. Count II alleged the following:

*521 14. The Defendants and their agents, employees or servants knew or should have known that the Plaintiffs' decedent and other minor children were entering or would enter the property of the Defendants to swim in the pond located on the property and in spite of this knowledge, installed upon the property a pump which had its intake pipe located beneath the surface of the pond and was concealed from Plaintiff's decedent and other minor children.
15. That the Decedent was attracted onto the property of the Defendants by the pond, and entered the pond to swim and dive based on such attraction and allurement.
16. Defendants and their agents, employees or servants knew or should have known that the installation of the pump and concealed intake pipe beneath the surface of the pond, with no warning being posted and no supervision of the operation of the pump involved an unreasonable risk of death to Plaintiffs' decedent and other minor children entering the property. Further, Defendants knew or should have known that the maintenance of this pipe in its concealed condition without any screen or guard on the pipe created an extremely hazardous condition and a trap.
17. Plaintiffs' decedent had never seen the pump located on the pond before the date of his death and being unaware of the concealed pipe, its size and location within the pond, could not realize the risk involved in swimming in the pond.
18. Defendants knowingly allowed a dangerous condition involving unreasonable risk of harm to exist upon their property. (emphasis added)
As the basis for summary judgment as to count I, the court below found in part:
[T]he Defendants had an oral contract with one Sam White, for the digging of this pond. The sole consideration to be received by Mr. White was the fill from the excavation. It is not shown that the Defendants retained any right to control the work but it is expressly shown that they did not in fact exercise any control over the work. They had reserved the right to terminate the work at their option but had not exercised this option at the time of the death of Plaintiffs' son on July 7, 1980. The contract required that the bank of the pond be slopped [sic]. Mr. White subcontracted that work to a Mr. Davis, a fact of which the Defendants were unaware. Mr. Davis had within the two or three days before the accident brought upon the premises the pump which was in operation and which was involved in the accident. The Defendants did not know Mr. Davis was on the job and exercised no control over his work. The Defendants had knowledge that a pump had been used by Mr. White in the past for the purpose of draining water from the pond, to aid and assist in the work. The Defendants had no knowledge that the deceased was on the property on July 7 and had never given him permission to be on the property at any time. The Defendants' property was completely enclosed by a fence with a gate. The Plaintiffs do not assent that the gate was opened or that the deceased used the gate at any time. Based on the foregoing facts, the Court concludes, as a matter of law, that the relationship between the Defendants and Mr. White was one of owner and independent contractor (footnote omitted) and that the deceased minor plaintiff was a trespasser or at most an uninvited licensee. The owners did not know of his presence and had no opportunity to take precautions to warn him, if they had been aware that the pump constituted a dangerous condition. (emphasis added)
The facts set out above would negate a determination of liability under the attractive nuisance doctrine. Thus, it is obvious that the appellants cannot prevail. Based *522 on the principle of collateral estoppel.[1] I would remand the case with directions to enter a final summary judgment in favor of appellees.
SHARP, Judge, concurring in part and dissenting in part.
I dissent only on the affirmance of the summary judgment as to Count I; otherwise, I endorse the per curiam opinion.
The lower court granted summary judgment for Dr. Saha because it found his relationship with White and Davis was employer  independent contractor. I question whether the record in this case is so clear that a jury might not have found the casual, verbal, and long-term relationship between White and Dr. Saha was a kind of partnership or joint venture, which would impose vicarious liability on Dr. Saha. I think the status of the parties should have been submitted to a jury. Gregg v. Weller Grocery Company, 151 So.2d 450 (Fla. 3d DCA 1963), 41 Am.Jur.2d Independent Contractor § 53 (1968).
Further, even if the relationship between White-Davis and Dr. Saha was one of employer  independent contractor, the record discloses disputed facts upon which a jury could find the general rule of non-liability should not apply here.[1] Read in a light most favorable to the appellants,[2] the depositions and affidavit in the record establish that Dr. Saha's excavated pond had become a favorite swimming hole for the neighborhood children. For two summers since it was dug, and while it was being enlarged, they regularly climbed the fence and swam in the pond, and played on the "mountains" or "hills" of dirt created by the drag-line operation.
The children thought they had Dr. Saha's permission to swim in the pond. He gave permission to one child to swim there and an unidentified worker on a bulldozer told another she could swim in the pond. Dr. Saha frequently visited the property to feed his livestock. The children saw him and his workers on the property while they were swimming. One child built a diving board at the deep end of the pond, which they played on. The workers as well as Dr. Saha saw them and they must have been aware that children were swimming in the pond on a frequent basis.
The excavation and digging process involved the simultaneous running of a pump to drain down the water in the pond so that dirt could be dug out along the slopes or edges. White's six inch pump ran from time to time at the site, for at least a year prior to the accident. Dr. Saha must have been aware of it, due to his frequent visits to the property. Aside from running on gasoline rather than diesel fuel, White's pump was not materially different than Davis', the pump involved in the child's death. Both were six inch pumps, used in similar ways to lower the water level in the pond.
White and Davis were both aware that various neighborhood children regularly trespassed on Dr. Saha's property to swim and play on the dirt piles. White testified you would have to be blind not to be aware of the children's presence. Both were concerned that a child might be injured by their equipment (backhoes, dragline, tractors) or trucks driven onto and off the property by other small business independent contractors.
On the day the child drowned, Davis started the pump running early in the morning. He noticed children had put mud on his backhoe and tractor parked near the pond. It was still wet, and had small feet and hand prints on it. Near the banks he noticed many children's bare foot prints. He also knew the hose he was using to pump the water out of the pond was mashed at the intake end, and would not have pulled enough water had it not been *523 for an eighteen inch gash along the side near the end, and one closer to the surface. The holes were unscreened and unshielded. The hose was under water, and unmarked. The pump and hose were at the deepest part of the pond, near the diving board the children had made and used often. Despite all of these indicia of the presence of children, Davis left the pump running, unmarked and unsupervised at 11:00 a.m. when he left for lunch. He did not return until 4:00 p.m., when he learned of the accident.
The scenario of this tragedy, although disputed in part by appellants, could, I think, enable a jury to find liability on the part of Dr. Saha for his own negligence in not taking reasonable precautions to protect the children from injury resulting from their contact with the dangerous machinery operating on his land.
A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area thereof, is subject to liability for bodily harm there caused to them by his failure to carry on an activity involving a risk of death or serious bodily harm with reasonable care for their safety.
Restatement (Second) of Torts § 334 (1965).
A Florida case which appears to apply this Restatement principle is Maldonado v. Jack M. Berry Groves Corp., 351 So.2d 967 (Fla. 1977). A three year old child accompanied his parents to the owner/defendant's grove, where they picked fruit as part of a crew hired and supervised by an independent contractor. An employee of the independent contractor ran a "goat" to lift tubs of fruit into trucks. He was operating the vehicle in reverse, without a rearview mirror, when he ran over the child. The Maldonado court based the grove owner's liability on the fact that the owner knew children were present with their parents in the grove, although it tried to discourage the practice of bringing the children; and it knew the operation of the "goat" near young children created a dangerous situation for them. The court held that the fact that the goat was used by an independent contractor "will not shield an employer/landowner from legal liability, if the employer/landowner was negligent in failing to take sufficient precautions to alleviate the dangerous situation." Id. at 968. Summary judgment for the landowner was reversed, as it should be in this case.
An additional exception to the rule of non-liability for torts of independent contractors exists for work done on a landowner's land which is dangerous by its nature or likely to cause a special risk of harm to others unless special precautions are taken. Restatement (Second) of Torts § 416 (1965); 2 Fla.Jur.2d Agency & Employment § 113 (1977). Under these circumstances, the independent contractor defense is not available to the landowner. See Rayonier, Inc. v. Bryan, 249 F.2d 405 (5th Cir.1957); Rohlfs v. Weil, 271 N.Y. 444, 3 N.E.2d 588 (1936); Richman Brothers Company v. Miller, 131 Ohio St. 424, 6 Ohio Op. 119, 3 N.E.2d 360 (1936).
Florida cases have recognized this exception. See Maule Industries, Inc. v. Messana, 62 So.2d 737 (Fla. 1953) (damages caused by independent contractor pumping water on landowner's land, which resulted in flooding and damage to plaintiff's crops); Stuyvesant Corp. v. Stahl, 62 So.2d 18 (Fla. 1952) (hotel liable when third party injured by employee of independent contractor who had parking concession, and employee was driving an automobile in the course of his employment); Florida Freight Terminals, Inc. v. Cabanas, 354 So.2d 1222 (Fla. 3d DCA 1978) (improper loading of cargo on airplane by independent contractor); Ross v. Heitner, 156 So.2d 869 (Fla. 3d DCA 1963) (damage caused by independent contractor's use of chemicals in exterminating pests in structure). Where there is evidence to support it, the question of whether the activity is dangerous should be resolved by the jury.[3]
*524 In Florida Power & Light Company v. Price, 170 So.2d 293 (Fla. 1964), the court refused to apply this rule to the employee of an independent contractor who was injured by another employee, in a suit against the land or easement owner, because the injured person was an employee rather than a member of the public. However, it reaffirmed the exception as stated by the district court of appeals for injuries to a member of the public:
As to such work, liability cannot be evaded by employing an independent contractor  unless proper precautions are taken. The taking of these precautions, it is said, is a non-delegable duty owing to third persons who may sustain injuries from the work; and in such instances, the contractor is considered an agent or servant for whose act his employer is responsible. Whether work of a given character is to be regarded as inherently or intrinsically dangerous is to be determined by applying the test of whether danger inheres in the performance of the work ... and it is sufficient if there is a recognizable and substantial danger inherent in the work, even though a major hazard is not involved.
Id. at 295.
This record contains a sufficient basis for a jury to find the work being done on Dr. Saha's premises was inherently dangerous, or dangerous to known child trespassers, and therefore liability on the part of the landowner could be premised on his own negligent failure to take precautions[4] or on vicarious liability for his independent contractor's failure to do so.[5] For these reasons I think summary judgment was improperly entered on Count I (the negligence count) in this case.
NOTES
[1] Most courts now have abandoned the requirement of allurement. W. Prosser, Law of Torts § 58 (4th ed. 1971).
[2] See also Atlantic Peninsular Holding Co. v. Oenbrink, 133 Fla. 325, 182 So. 812 (1938), where a child was attracted to a hotel under construction and fell through an open shaft when the fourth floor collapsed due to a latent defect in the floor's construction. The attraction was the unfinished hotel and the danger was the defective floor and unguarded shaft.
[1] See Husky Industries, Inc. v. Griffith, 422 So.2d 996 (Fla. 5th DCA 1982).
[1] The general rule of an employer's lack of liability for the torts of a general contractor has so many exceptions one authority suggests the exceptions have become the rule. Annot., 96 A.L.R.3d 1213 (1979).
[2] Holl v. Talcott, 191 So.2d 40 (Fla. 1966).
[3] Channell v. Musselman Steel Fabricators, Inc., 224 So.2d 320 (Fla. 1969); Hill v. Walker's Cay Air Terminal, Inc., 405 So.2d 198 (Fla. 4th DCA 1981); 41 Am.Jur.2d Independent Contractor § 53 (1968).
[4] Maldonado v. Jack M. Berry Groves Corp., 351 So.2d 967 (Fla. 1977).
[5] Channell, 224 So.2d 320.